GARGANO, J.
This is an appeal from a judgment of the Superior Court of Kern County directing appellants, the City of Bakersfield and the Pension Board of the Fireman’s Disability and Retirement Fund of such city, to reinstate, retroactively from March 6, 1963, the disability retirement pension of the petitioner, J ames 0. Pathe, respondent herein, for disability incurred by respondent in the course of the performance of his duty as a fireman.
Respondent, who had been employed as a fireman in the Fire Department of the City of Bakersfield for over 10 years, became afflicted with a heart condition during the early part of 1960. On March 13, 1960, he applied to the Industrial Accident Commission of the State of California for a disability award under the Workmen’s Compensation Laws enacted by the Legislature and codified in division 4 of the Labor Code. On August 18, 1961, the commission issued “Findings and Award” in his case (No. 60 BA 1770), including Finding No. 2 reading as follows: “Said employee did not sustain an injury arising out of and occurring in the course of employment. ’ ’
In the meantime the Pension Board of the Fireman’s Disability and Retirement Fund of the City of Bakersfield, hereafter referred to as the pension board, on its own initiative and without waiting for a ruling by the Industrial Accident Commission on respondent’s application to that organization, retired respondent from active service on a service-connected disability retirement pension amounting to $270.45 per month. In other words, in the month of July 1961, almost one month before the Industrial Accident Commission ruled on respondent’s application for an industrial accident award, the pension board, without receiving an application for retirement from respondent, determined that his disability was service-connected and retired him on a service-connected disability pension. However, on March 6, 1963, almost two years later, the pension board, without any hearing and without notification to respondent and solely upon the opinion of the city attorney that the ruling of the Industrial Accident Commission was controlling, reduced respondent’s pension to $135.22 per month; the smaller allowance is the monthly pension which respondent is entitled to receive for a disability not acquired in the course of employment.
Appellants present four main contentions for reversal. *409 These contentions, although not necessarily in the order discussed in their brief, are substantially as follows:
I. That the Industrial Accident Commission had the exclusive jurisdiction to determine whether respondent’s disability was service-connected and its determination superseded the prior action of the retirement board retiring respondent on a disability retirement pension.
II. That, even if it is assumed arguendo that the Industrial Accident Commission did not have the exclusive jurisdiction to determine the nature of respondent’s disability, its decision on this issue was nevertheless binding on the pension board and applied retrospectively under the doctrine of res judicata.
III. That the retirement board’s action allowing respondent a disability retirement pension was a nullity because there is no record of a hearing or determination as to respondent’s disability, the board made no written findings of fact and there were no doctors’ reports indicating that respondent’s disability was service-connected.
IV. That, even if it is assumed that the action of the retirement board was not a nullity, it nevertheless abused its discretion when it retired respondent for a service-connected disability because there was no substantial evidence to support its decision in this respect.
I
Appellants’ first contention raises the fundamental question of jurisdiction which is ever present when two tribunals are vested with the responsibility of adjudicating issues arising from the same or similar subject matter. In other words, respondent’s right to a disability retirement pension under the city charter and his right to an industrial accident award under the Workmen’s Compensation Laws were dependent upon his having incurred a service-connected disability. Thus, appellants assert that the Industrial Accident Commission had the exclusive jurisdiction to make this determination under section 21 of article XX of the California Constitution and under Labor Code section 5300.
Section 21 of article XX of the California Constitution provides as follows: “The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen’s compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for *410 injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen’s compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their emplosunent, irrespective of the fault of any party ; also full provision for securing safety in places of employment ■ full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State Compensation Insurance Fund; full provision for otherwise securing the payment of compensation ; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government. ’ ’
Section 5300 of the Labor Code reads in pertinent part: “All the following proceedings shall be instituted before the commission and not elsewhere, except as otherwise provided in Division 4.
“ (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto. ’ ’
It is indisputable that the Industrial Accident Commission and the pension board exist for entirely different reasons and were established to attain wholly independent objectives. The Industrial Accident Commission exists primarily to adjudicate workmen’s compensation claims under the general laws adopted by the Legislature pursuant to the Constitution. Its main objective, therefore, is to carry out the legislative scheme which is to provide adequate compensation for employees, public or private, who are injured in the course and scope of their employment while such employees are disabled and incapable of earning a living. On the other hand, the pension board is concerned only with the retirement *411 of a limited class of public employees under a retirement system which was adopted primarily for the betterment of city government. Its objective is not only to recognize the public obligation to certain employees who after long and faithful service become incapacitated by age or physical disabilities, but it is also to make certain that these employees will be replaced by more capable employees for the betterment of the public service without undue hardship on the employees removed (Packer v. Board of Retirement of the Los Angeles County Peace fficers Retirement System, 35 Cal.2d 212 [217 P.2d 660]). In fact, it is presumably to enable the retirement board to accomplish this latter objective that it is given the power under the city charter to retire an employee on its own initiative as it apparently did in the instant case.
With this basic distinction between the function of the two independent tribunals in mind, it is manifest that the jurisdiction of the Industrial Accident Commission is exclusive only in relation to its own ohjectives and purposes and at the very most overlaps the subject matter jurisdiction of the pension board on a single issue of fact only, the issue as to whether an injury or disability is service-connected. Thus, it is also manifest that the pension board does not lose its inherent power to retire a city employee who “is physically or mentally incapacitated for the performance of duty’’ simply because the employee has applied (or intends to apply) to the Industrial Accident Commission for an award under the Workmen’s Compensation Laws, nor is the commission’s determination as to the nature of the employee’s injury or disability binding on the pension board in the sense that it is without jurisdiction to decide the same issue. At the very most the Industrial Accident Commission’s decision is binding on the pension board under the doctrine of res judicata because under the city charter the retirement board acts as an agent of the city.[1] As stated by the Supreme Court in French *412 v. Rishell, 40 Cal.2d 477, 479 [254 P.2d 26] : “The doctrine of res judicata is applicable where the identical issue was decided in a prior ease by a final judgment on the merits and the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. ’ ’ And at page 482 the court also said: “It is immaterial that the pension board was not a party to the Industrial Accident Commission proceeding. The city, which is not only a party herein but the real party in interest, was also a party to and appeared in the prior proceeding. Under the city charter, the pension board acts as an agent of the city, and, in this representative capacity, it is bound by the commission’s decision if the city is bound. ’ ’
Appellants also argue that compensation awards made under the city charter are not salary but are the same as compensation awards made under the Workmen’s Compensation Laws. Hence, they conclude that the city charter provisions relating to retirement for service-connected disability conflict with the state compensation laws and the latter must prevail.
It is settled that if there is any conflict between the city charter provisions and the compensation sections of the Labor Code the latter must prevail (Healy v. Industrial Acc. Com., 41 Cal.2d 118 [258 P.2d 1]). Moreover, section 179(15) of the city charter provides: ‘ ‘ The provisions of the foregoing sections shall in no way alter, modify, change, or abrogate any of the terms, conditions or provisions of that certain act of the legislature known and referred to as the Workmen’s Compensation, Insurance and Safety Act or any amendments thereto.” We conclude, however, that there are no conflicts in the instant case. The city retirement system does not affect, abrogate or modify the Workmen’s Compensation Laws in any manner. To the contrary, it grants additional compensation benefits to employees who are compelled to retire for service-connected disabilities and to this extent it is in harmony rather than in conflict with the Workmen’s Compensation Laws of the Labor Code.
Appellants rely on French v. Rishell, supra, 40 Cal.2d 477, in support of their position. As we have stated, the Supreme Court in that case simply held that the decision of the Industrial Accident Commission on a question of fact is binding on *413 another tribunal in a subsequent action involving the same question of fact between the same parties and their privies under the doctrine of res judicata. This doctrine, which is always applicable under these circumstances, presupposes concurrent and not exclusive jurisdiction. Moreover, the Supreme Court at page 481 of the opinion used this significant language: “It is clear, however, that a pension board is deprived of no power in such case except the power to make an independent finding on an issue of fact previously determined by another tribunal. This limitation is, of course, inherent in the doctrine and is a necessary result in every ease in which it is applied.” (Italics added.)
II
Having decided that the Industrial Accident Commission’s determination that respondent’s heart condition was not service-connected was not binding on the pension board from the jurisdictional viewpoint, we shall now consider appellants’ second contention that the commission’s decision nevertheless applied retrospectively to the earlier decision of the retirement board under the doctrine of res judicata. We conclude that this contention is entirely without merit. Such a holding would be contrary to the very purpose of the doctrine, which is to bring an end to litigation. It could also lead to extreme hardships and manifestly unjust results. This follows for a decision of the retirement board to retire an employee on a service-connected disability pension would be open to collateral attack many years later 'and at a time when the reduction of the pension (and possible refunds) could create an undue burden on an employee who retired under compulsion without appealing or challenging the retirement board’s decision. Thus, the trial judge accurately and succinctly interpreted the law on this subject in his Memorandum of Opinion. The trial judge stated: “The doctrine of res adjudicata and collateral estoppel by judicial interpretation, in all cases that I have ever been able to read or find, is to the effect that the final judgment or decree on the merits, of the court of competent jurisdiction, is conclusive of the rights of the parties or their privies in all later actions on points and matters determined in the former proceeding. Its purpose and effect has always been to bring an end to litigating the same facts over again, which presupposes that the doctrine can only be applied prospectively. (See French v. Rishell, 40 Cal.2d 477 [254 P.2d 26]; Bernhard v. Bank of America, 19 Cal.2d 807 [122 P.2d 892].)
*414 “It is also to be noted that the defense can be waived and is not jurisdictional. (Baird v. Superior Court, 204 Cal. 408 [268 P. 640]; Domestic and Foreign Petroleum Co. v. Long, 4 Cal.2d 547 [51 P.2d 73]; Dillard v. McKnight, 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835].)
“It is also to be noted that this is an affirmative defense, and the burden of proof must be borne by he who asserts it. (See Horton v. Goodenough, 184 Cal. 451 [194 P. 34]; Emerson v. Yosemite Gold Mining, 149 Cal. 50 [85 P. 122].) ”
III
Appellants contend that the pension board’s attempt to retire respondent on a disability pension was a nullity because there is no record of a hearing or determination by the pension board as to respondent’s disability; the board made no written findings of fact and there were no doctors’ reports indicating that respondent’s disability was service-connected. Significantly, however, appellants do not assert that respondent was not effectively retired by the alleged invalid action; paradoxically, they only claim that he is not entitled to a service-connected disability retirement pension. In other words, if the pension board’s action was a nullity, as appellants contend, it is arguable that respondent was illegally compelled to retire and is entitled to receive back wages. Thus, appellants’ contention is a two-edged sword.
In any event, we conclude that there was substantial evidence to support the trial court’s decision that the members of the pension board determined that respondent’s disability was service-connected at a board meeting by board action in substantial compliance with the city charter. In fact, we hold that appellants’ evidence did not overcome the presumption that official duty had been regularly performed (Evid. Code, § 664) even though the absence of board minutes or written findings was not adequately explained by the pension board and it is undisputed that there were no medical opinions that respondent’s heart condition was service-connected.
The pension board members testified that the matter of respondent’s retirement was presented at a regular board meeting and was thoroughly discussed. They also testified that they determined that respondent’s disability was service-connected by a motion which was made, seconded and voted upon by the board members. In addition, Mr. Adams, the assistant secretary of the pension board, testified that notes were taken during the meeting by a Mrs. Rhynes who was the secretary *415 of the city manager. Thus, it is evident that the failure of the secretary to transcribe the minutes (if this is what actually occurred) was not jurisdictional as to the retirement board’s action but merely constituted an irregularity in the proceeding. The irregularity of the proceeding of a subordinate city agency which is governed by a board that includes the mayor and the city manager amongst its members and which is entitled to the free legal services of the city attorney cannot and should not be urged to defeat the substantial rights of an innocent party who had no control over the meeting and who did not even solicit its action.[2]
Moreover, the evidence clearly indicates that respondent was examined by at least three medical doctors and that written medical reports were filed with the pension board before it made its determination. Although the doctors did not express opinions as to whether respondent’s heart condition was service-connected, they stated that he was incapacitated for the performance of duty. Significantly, the city charter does not expressly require a doctor’s report indicating that the disability is service-connected. It simply states that the employee shall be examined by three medical doctors and provides that he shall be retired for a service-connected disability “if such medical examination and other available evidence shall show to the satisfaction of the Board that said member is physically or mentally incapacitated for the performance of duty and ought to be retired and . . . that the disability is the result of injury or illness incurred in the performance of duty. . .” (City Charter section (177) 13.) Consequently, the retirement board may, under the city charter, base its decision that an employee’s disability is service-connected on the medical information contained in the doctors’ reports even *416 though the doctors do not actually express an opinion to that effect.
IV
Appellants contend that the pension hoard abused its discretion when it granted respondent a disability pension; they assert that there was no substantial evidence to support its decision because there were no medical opinions that respondent’s heart condition was service-connected and the presumption that if a fireman suffers a heart condition it is service-connected (Lab. Code, § 3212) is not available to the pension board but only to the Industrial Accident Commission. Yet the record indicates that the pension board reduced respondent ’s pension solely upon the opinion of the city attorney that a subsequent ruling of the Industrial Accident Commission was controlling without any hearing or determination that respondent’s condition had changed. Thus, it is incongruous for the retirement board and its principal, the City of Bakersfield, to now assert that the board also abused its discretion when it granted respondent's service-connected pension in the first place. Even so, the trial judge expressly found against appellants on this issue and we conclude that there was substantial evidence to support his decision under the rule we articulated in Cosgrove v. County of Sacramento, 252 Cal.App.2d 45 [59 Cal.Rptr. 919].
First, according to Captain MeAteer, the members of the retirement board did not rely solely on the presumption of Labor Code section 3212 when the board determined that respondent’s heart condition was service-connected. To the contrary, he testified that the board members also relied on the reports of the medical doctors.[3] Curiously, the doctors’ *417 reports were not offered into evidence by appellants. Hence, we must assume, under the presumption that official duty has been regularly performed, that even though the doctors did not express opinions as to whether respondent’s condition was service-connected there was sufficient medical information in their reports to enable the pension board to arrive at its determination.
Second, the applicability of the presumption which arises under Labor Code section 3212 in a proceeding before a city pension board is clearly established in Buckley v. Roche, 214 Cal. 241 [4 P.2d 929], and Bolger v. City of San Diego, 239 Cal.App.2d 888 [49 Cal.Rptr. 204], Respondent relies on the dicta of French v. Rishell, supra, 40 Cal.2d 477, for the contrary proposition. However, in French the Supreme Court was merely discussing the presumption in connection with defendant’s argument on the burden of proof and we do not construe this discussion as authoritative for the rule advocated by appellants. In any event, as we have stated, there was sufficient evidence to support the trial court’s decision even without the presumption.
Appellants’ remaining arguments for reversal are totally devoid of merit and no further comment is necessary.
The judgment is affirmed.
Stone, J., concurred.

That the decision, of the Industrial Accident Commission is not binding on the retirement board from the jurisdictional viewpoint but only under the doctrine of res judicata is clearly indicated by the case of Flaherty v. Board of Retirement, 198 Cal.App.2d 397 [18 Cal.Rptr. 256], In that case an employee of a fire protection district which had joined the county retirement system made an application to the Industrial Accident Commission for a workmen’s compensation award and the commission determined that his injury was service-connected. The employee also applied to the county retirement board for a service-connected disability pension and his claim was rejected. The appellate court held that the decision of the Industrial Accident Commission was not binding on the retirement board under the doctrine of res judicata because, under *412 the county employees retirement law of 1937, the county retirement association is an entity which exists separately and independently of the fire protection district and its management is vested in its own retirement hoard.

Similar irregularities apparently occurred in the past. In this connection Mr. Adams testified as follows:
"Q. Mr. Adams, do you have any explanation or idea why this determination was not entered in the minutes ?
A. No, sir.
Q. In past cases has the Board issued, written in writing, their determination?
A. Not to my knowledge, sir.
Q. In other words, they do not follow the strict letter of the Code?
A. If that’s required by the Charter, I would presume such to be the case. It’s probably an oversight of the Board.
Q. They haven’t in any of the other eases gotten out written notice of determination either, have they?
A. Not to my knowledge.”
Surely appellants do not contend that all of the past actions of the retirement board are also invalid.

Captain MeAteer, a member of the board, under direct examination by Mr. Hays, testified as follows:
"Q. Was there a determination made on the question of whether or not it was job connected at that particular meeting to which you have reference?
A. Yes.
Q. What determination was made?
A. On the findings of the three doctors’ reports that had been previously received, the presumption that a heart condition is job incurred with firemen, it was determined this was job incurred, and that Mr. Pathe be retired.”
And on cross-examination by City Attorney Hoagland the witness stated:
”Q. And a determination made. Is that what you testified to? A determination made it was service connected?
A, Yes, I believe that’s right.
*417 Q. Based upon the three doctors’ reports and a presumption, is that correct?
A. Yes, sir.
Q. Do you recall who the doctors were 9
A. I didn’t until I refreshed my memory. It was Dr. Kearns, Dr. Bosonetto, and Dr. Einstein. ’ ’