[Civ. No. 10136. Fourth Dist., Div. One. Mar. 31, 1971.]

THEODORE A. GODSHALK, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Kenneth Sperry for Plaintiff and Appellant.

John W. Witt, City Attorney, and R. Thomas Harris, Deputy City Attorney, for Defendant and Respondent.

## OPINION

WHELAN, J.—Theodore A. Godshalk (plaintiff) appeals from a judgment for the City of San Diego (City) in an action seeking declaratory relief with respect to plaintiff's right to receive a disability pension.

Plaintiff was employed by City's fire department from October 28, 1942 until May 22, 1955, when he suffered a severe heart attack which made it permanently impossible for him to work. For five years prior to the heart attack he had held the position of engineer.

On May 27, 1955, A. C. Penrose, acting chief of the fire department, notified the Board of Trustees of the Police and Fire Retirement System (Board of Trustees) of plaintiff's heart attack.[1]

On May 31, 1955, Board of Trustees took action reflected in its minutes as follows: "The disability of Fire Engineer Theodore A. Godshalk was reported as of May 22, 1955. Disability due to Coronary Thrombosis. Engineer Godshalk was absent from duty from May 22, 1955 until further notice." The minutes of the meeting held May 31, 1955 contained only the foregoing with regard to plaintiff.

A printed form of notice over the signatures of the Chairman and Secretary of Board of Trustees to the City Auditor and Controller and City Treasurer, under date of May 31, 1955, was as follows:

"You are hereby notified that the Board of Trustees of the Police and Fire Retirement System made a determination with respect to the disability of Theodore A. Godshalk of the Fire Department at its meeting on 5-31-1955.

"The Board of Trustees has determined by evidence submitted that the above named member is physically or mentally disabled by reason of bodily

---

[1]The communication dated May 27, 1955 was as follows:

"Subject: Disability of Theodore A. Godshalk, a .................. in the Fire Department, a member of the Police and Fire Retirement System.

"The above named employee has been disabled by reason of service-connected injury sustained May 22, 1955, and is unable to perform his duties. Certificate of attending physician so stating is attached.

"It is requested the Board determine the status of the above named employee with respect to disability pay in accordance with provisions of Ordinance 4898 (NS), and that notice thereof by the Secretary of the Board be made to the Auditor and Comptroller in anticipation of affirmative action thereon, at the first Board meeting thereafter; and further, that the Secretary of the Board forward to the Auditor and Comptroller a certified copy of its action in connection therewith following such Board meeting. Godshalk was relieved from duty May 23, 1955, because of coronary thrombosis."

Under the signature appeared the following: "Encl. 2."

injuries received in, or by reason of sickness caused by, the discharge of duty, or as a result thereof, to such an extent that he is entitled to receive in lieu of the benefits of Section 163 of Article X, a sum of money equal to his full salary, for a time not to exceed one year of such disability, minus, however, such Workmen's Compensation Benefits as said member shall have received for such period of time as he is paid the sum equal to his salary."

The relevant sections of the Charter of City which Board of Trustees acted under are sections 152, 159, 163 and 166.

Section 152 created the Police and Fire Retirement System Fund, to be used exclusively for the payment of pensions under order of Board of Trustees.

Section 163 provided for retirement on a pension for disability caused by service.

Section 166 required that there be filed with Board of Trustees certificates from at least three physicians for a disability retirement.

Section 159 declared that no pension granted or authorized should be increased or decreased after it had been fixed lawfully by Board of Trustees, except where disability had ceased and the employee had returned to City's service.[2]

Pursuant to the authorization contained in section 163, *supra,* City, on

---

[2]Sections 163 and 166, so far as relevant, read as follows:

"Section 163. PAYMENTS FOR DISABILITY. Whenever any member entitled to the benefits of this system shall become physically or mentally disabled by reason of bodily injuries received in or by reason of sickness caused by the discharge of duty or as a result thereof to such an extent as to render necessary his retirement from active service, said Board of Trustees, upon determining such necessity for retirement, shall retire such member or employee and cause to be paid to him a pension equal to one-half of the salary attached to the rank held by him for one year or more previous to the time the disability was incurred; . . . and, provided further, that the Council of said City may provide by Ordinance that for a time not to exceed one year of such disability, such member shall be entitled to receive in lieu of the benefits herein provided, his full salary, payable to him out of the salary funds of the City, minus, however, such Workmen's Compensation Benefits as said member shall have received for such period of time as he is paid his salary."

"Section 166. CERTIFICATES OF DISABILITY. No person shall be retired for disability under the provisions of this Article, or receive any benefits therefrom, unless there shall be filed with the Board of Trustees certificates of disability which shall be verified by physicians regularly employed by the Department from which such person was retired and two other regularly licensed physicians of the City of San Diego, and the person whose retirement is contemplated shall have the right to select one of such physicians if he chooses to do so. Said Board may require other evidence of disability before ordering such retirement, but, upon satisfactory evidence of such disability, the Board must retire such person."

August 21, 1951, enacted Ordinance No. 4898 (New Series) applicable to firemen who were members of the pension system June 30, 1946. In general the ordinance followed the language of the enabling Charter provision.

In all cases where Board of Trustees had authorized payment under Ordinance No. 4898, it was customary for Board of Trustees, at the end of one year, to determine whether the employee was entitled to disability benefits under section 163.

On June 10, 1955, the duties previously performed by Board of Trustees were taken over by the Board of Administration of the City Employees' Retirement System (Board of Administration).

On January 4, 1956, the Industrial Accident Commission (IAC), now the Workmen's Compensation Appeals Board (WCAB), in a proceeding in which plaintiff had applied for compensation, found the evidence there presented failed to establish plaintiff's heart trouble and resultant disability were service-connected.

On January 18, 1956, plaintiff applied to Board of Administration for industrial disability retirement. At a hearing on February 16, 1956, Board of Administration agreed to pay plaintiff a nonindustrial disability pension without prejudice to his rights pending the outcome of IAC's decision. Board of Administration further agreed if IAC decided in plaintiff's favor on his petition for rehearing, it would make an adjustment for the proper retirement rate and the remainder of his disability pay. Plaintiff was paid a monthly nonindustrial pension of $101.46 from January 1, 1956 until June 1, 1962.

At the time plaintiff entered the service of City, section 185 of the Charter provided that for non-service-connected disability after 10 years of service, the fireman should receive a total sum of $1,000.

Board of Administration did not follow section 185 of the Charter in fixing the non-industrial disability pension, but did so according to a formula fixed by ordinance adopted under a Charter provision enacted subsequent to plaintiff's original employment.

Plaintiff's petition for reconsideration was denied by IAC on February 21, 1956.

On April 21, 1959, plaintiff commenced action #234476 against City, Board of Administration and City officers, seeking declaratory relief as to plaintiff's right to receive amounts deducted through the defendants' mistaken belief that certain statutory amendments of retirement withholding rates could be applied to amounts withheld from the salaries of those

employed before the amendments. Defendants stipulated plaintiff was entitled to a judgment of $2,231.57, which was entered and satisfied on October 17, 1961.

On June 26, 1962, Board of Administration notified plaintiff his pension payments would be terminated unless he returned, within 30 days, the amount paid pursuant to that judgment. Plaintiff, through his attorney, sent a check for $124.55, which he admitted was owing to City, but refused to return anything more and demanded full payment of his non-service-connected disability which was then being withheld. That demand was refused. On January 30, 1963, plaintiff filed the complaint which is the subject of this action, seeking a declaration of plaintiff's right to receive his monthly nonindustrial pension payment of $101.46 and also seeking recovery of the unpaid pension benefits.

After the complaint was filed, and upon inspection by plaintiff's attorney of the civil service and pension file records, both in possession of City, the parties discovered for the first time that Board of Administration had never determined whether plaintiff was entitled to receive a service-connected disability pension as he had requested on January 18, 1956.

Board of Administration, pursuant to plaintiff's application, met on April 10, 1964 to make such a determination. Plaintiff filed with Board of Administration statements of five physicians, four of which were written in January 1956, the other in November 1955. Four of the physicians stated they had examined plaintiff. Two of those were of the opinion plaintiff's condition was not the result of "intemperance, willful misconduct or violation of law." The other two opined plaintiff's condition had been caused by his occupation. The fifth physician, the surgeon of the San Diego Fire Department, was of the opinion firemen generally were more susceptible to heart trouble than others.

On April 21, 1964, Board of Administration denied plaintiff's application for industrial disability on the grounds that on May 31, 1955 Board of Trustees did not have before it the medical certificates required by Charter section 166, and that the final decision of IAC was conclusive that plaintiff's disability had not been caused by his service. Board of Administration also reinstated the monthly payment of $101.46 of nonindustrial disability retirement.

### Contentions On Appeal

Plaintiff states his contentions in the following language:

1. The lower court erred in concluding the finding of Board of Trustees

was not res judicata with respect to the subsequent finding of Board of Administration.

2. The lower court erred in concluding plaintiff was not entitled to receive a service-connected disability pension.

3. The lower court erred in finding plaintiff suffered no damage.

4. The lower court erred in concluding plaintiff was estopped from raising the question of whether he was entitled to receive a service-connected disability pension.

5. The judgment of the lower court is fatally defective in that it fails to make a judicial determination of the parties' respective rights, duties and obligations.

Chapter 2 of division 5 of part 4 of the Government Code deals with retirement systems for employees of cities. Section 45315, included in that chapter, is as follows: "The determination of the retirement board is final and shall not be modified or set aside except for fraud or abuse of discretion."

■ On the issue whether plaintiff's disability was industrial, the decisive question is whether the action taken by Board of Trustees on May 31, 1955 was conclusive. If it was not so conclusive, then the subsequent final decision of IAC (WCAB) is conclusive of that issue. (*French* v. *Rishell;* 40 Cal.2d 477 [254 P.2d 26].)

When on April 10, 1964, Board of Administration finally denied plaintiff's claim to industrial disability retirement, the decision of IAC had become final, so that the holding in *DeCelle* v. *City of Alameda,* 186 Cal. App.2d 574 [9 Cal.Rptr. 549], is inapplicable.

In *Pathe* v. *City of Bakersfield,* 255 Cal.App.2d 409 [63 Cal.Rptr. 220], the Court of Appeal held that the decision of the retirement board that Pathe's disability was service-connected was controlling in an action to recover a disability payment in spite of a subsequent determination by WCAB to the contrary.

There the court held further that the action of the board, although initiated by it, was effective to retire Pathe from the service and must be accepted as a conclusive decision upon which to base such retirement. In no event could the subsequent decision of WCAB be res judicata as to a decision of the retirement board made prior thereto. The theory WCAB had exclusive jurisdiction to determine if a disability arose out of the employment likewise was rejected.

Although the decision of the retirement board was not supported by

written findings in the *Pathe* case and there was no outright medical opinion that the disability was service-connected, the board had before it at the time three reports of medical doctors as called for by the Bakersfield City Charter.

It is noted further that in the instant case Board of Trustees did not purport to retire plaintiff until, at its meeting of February 16, 1956, it retired him for nonindustrial disability in acting upon his application for industrial disability retirement.

Secton 159 of the City Charter, which we have quoted, limits the finality of its application to a pension granted or authorized, the amount of which has been lawfully fixed; and excepts from its application a pension ordered paid to one whose disability has thereafter ceased.

Government Code section 45315 applies to a determination made that an employee be retired and to the ground for such retirement.

Neither section 159 of the City Charter, nor section 45315 of the Government Code, if it be applicable, gives finality to an action such as that taken on May 31, 1955 which did not purport to retire plaintiff.

Clearly the action was only an interim one, and the ordinance under which it was taken contemplated only an interim provision of full pay which was not chargeable to the pension fund administered by Board of Trustees.

Everything indicates that the ordinance under which plaintiff received his full pay until January 1956 was intended to allow such full pay on the theory a later determination would be made by IAC, with the further assumption that such determination would be one of disability arising from and in the course of employment. Since the full salary payments could not be made for more than one year, it is clear also that further action would be required by Board of Trustees to retire the employee in order that a pension could be paid to him from the pension fund.

In that situation the rule stated in *Motor Transit Co.* v. *Railroad Commission,* 189 Cal. 573, 586 [209 P. 586], should apply: " 'The peculiar effect of a determination of fact operating to conclude the question for other purposes than those of the very proceeding in which the determination is made is confined to strictly judicial determination alone.' "

In *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control,* 55 Cal.2d 728 [13 Cal.Rptr. 104, 361 P.2d 712], the court said, at page 732: " 'The key to a sound solution of problems of res judicata in administrative law is recognition that the traditional principle of res judicata as developed in the judicial system should be fully applicable to some administrative

action, that the principle should not be applicable to other administrative action, and that much administrative action should be subject to a qualified or relaxed set of rules concerning res judicata.' (2 Davis, Administrative Law, 568 . . .) . . . The doctrine is not applied . . . when '. . . the legislature intended that the agency should exercise a continuing jurisdiction with power to modify or alter its orders to conform to changing conditions . . .' "

▉ Furthermore, in the instant case the power of Board of Trustees to direct the payment of pension for industrial disability was nonexistent under section 166 of the Charter unless Board of Trustees had before it statements from at least three physicians.

In the case at bench the only record of the proceedings before Board of Trustees on May 31, 1955 is that the report of one physician may have been presented to Board of Trustees, if the communication from the acting fire chief be accepted at face value. At the bottom of the fire chief's communication there is a reference below his signature to one enclosure.

It may be granted that Board of Trustees was not required to keep its records in a formal or technical manner. It has, however, kept records. Those records do not show that there were certificates of at least three physicians before Board of Trustees on May 31, 1955, which, under section 166 of the City Charter, would have been necessary to support a finding of the existence of a disability requiring retirement. The record indicates that at most a certificate from a single physician may have been transmitted to Board of Trustees by the acting fire chief.

Whether the action of Board of Trustees, taken without the prescribed evidence, be considered as in excess of its jurisdiction or as an abuse of discretion, it may not stand as conclusive of an issue the determination of which could be made under the Charter only upon such evidence.

▉ A determination by an administrative body exercising quasi-judicial functions that it has jurisdiction to take a certain action is not conclusive and is subject to review by the court. (*Miller & Lux* v. *Industrial Acc. Com.,* 179 Cal. 764, 766 [178 P. 960, 7 A.L.R. 1291].)

In *Pathe* v. *City of Bakersfield, supra,* 255 Cal.App.2d 409, the members of the board testified as to what evidence they relied upon in taking their action and that they based it in part upon the reports of three doctors which were required by the city's charter.

Because those medical reports were not offered in evidence by the city of Bakersfield in the trial court, the Court of Appeal stated it would be presumed their contents supported the findings of the retirement board.

■ Here, there was nothing in the record before the trial court to show there was more than one medical statement before Board of Trustees.

Plaintiff has argued it must be presumed Board of Trustees performed its official duty on May 31, 1955 (Evid. Code, § 664), that is, that it did not act without having the required medical certificates before it.

The record is sufficiently clear that Board of Trustees had only one medical statement before it. Plaintiff in his brief does not assert otherwise. Indeed, he states that on April 10, 1964, before Board of Administration, plaintiff testified that he was examined by Dr. William C. Cooke on May 31, 1955. Clearly had he been examined by other doctors on or before that date he would have said so.

Significantly, too, he seems to have prepared the full strength of his medical evidence for the hearing on February 16, 1956.

■ The presumption that official duty has been regularly performed cannot serve to supplement an official record seemingly complete on its face and which indicates the questioned duty has not been performed, for the reason that the same presumption would apply to the correctness of the record. A public record is presumed to be true. (*Spear* v. *Board of Medical Examiners,* 146 Cal.App.2d 207, 211 [303 P.2d 886].)

■ It is also true that the presumption might be overcome by inferences clearly to be drawn that the required certificates had not been filed on May 31, 1955.

While we may presume that the evidence shown by the record to have been before the Board of Trustees tended to support its action, we cannot say that the record is incomplete in the absence of any evidence to that effect.

While it is possible and permissible to supplement such a record (*Westerman* v. *Cleland,* 12 Cal.App. 63, 70 [106 P. 606]; *Pathe* v. *City of Bakersfield, supra,* 255 Cal.App.2d 409), that was not done in the present case. We can only conclude the record is correct in showing that only one medical statement was before Board of Trustees on May 31, 1955.

For the reasons stated, Board of Administration, successor to Board of Trustees, was not bound by the action of Board of Trustees on May 31, 1955, and was free to hold that plaintiff's disability was nonindustrial as conclusively determined by IAC.

■ Plaintiff has taken the position that the stipulated judgment of October 16, 1961 in action #234476 was conclusive as to the rate at which

plaintiff was obligated to pay into the pension fund by the method of salary deductions. We agree.

That action was commenced April 21, 1959. At that time plaintiff had been receiving a monthly pension of $101.46 since March 1, 1956. No claim was made by City in action #234476 that such pension was not properly payable to plaintiff, or that the payment of that amount called for a rate of contribution that would reduce or wipe out any claim plaintiff might have to recover excess salary deductions withheld prior to his retirement.

It has not been directed to our attention that there is any provision in the retirement system scheme that would entitle an employee to obtain retroactively larger benefits than he would have been entitled to otherwise by paying into the fund the difference between the amount properly deducted from his pay and the amount that was called for in the ordinance fixing the larger benefits. (But see *Wisley* v. *City of San Diego,* 188 Cal.App.2d 482, at p. 488 [10 Cal.Rptr. 765].)[3]

Neither the minutes of the meeting of February 16, 1956 nor of April 10, 1964 speak of any amount of a monthly pension, as having been fixed by Board of Trustees, although the fixing of the amount is contemplated by section 159 of the City Charter, *supra.*

Because of the issues raised in action #234476, in which judgment was entered more than five years after the payments of $101.46 per month had been commenced, no question could be properly raised after the entry of judgment in that action that Board of Trustees had not lawfully fixed the pension at $101.46 per month.

We hold that the action of Board of Trustees on May 31, 1955 was not conclusive that plaintiff's disability was caused by the discharge of duty or as a result thereof; that the final decision of IAC that the disability was not of that character was res judicata in the subsequent hearing before Board of Administration; that the judgment in action #234476 was a determina-

---

[3]At the time action #234476 was commenced, section 143 of the City Charter was applicable to all city employees, although it did not apply to firemen at the time plaintiff was paying contributions to the Police and Firemen's Pension Fund. It has been in its present form since January 10, 1955, and reads in part as follows: "The retirement system herein provided for shall be conducted on the contributory plan, the City contributing jointly with the employees affected thereunder. Employees shall contribute according to the actuarial tables adopted by the Board of Administration for normal retirement allowances, except that employees shall, with the approval of the Board, have the option to contribute more than required for normal allowances, and thereby be entitled to receive the proportionate amount of increased allowances paid for by such additional contributions."

tion that plaintiff, then retired on a fixed monthly pension known to City, was nevertheless entitled to recover as excess contributions paid by him the sum that City later subtracted from his pension, and that he is entitled to recover from City that amount, less the sum of $124.55 admitted by plaintiff to have been properly chargeable to him.

The judgment is reversed with directions to the trial court to enter a judgment declaring the rights and duties of the parties in accordance with the views expressed herein.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied April 19, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 26, 1971.