[Sac. No. 7693.   In Bank.   Apr. 21, 1966.]

GENEVIEVE C. GORMAN, Petitioner, v. ALAN CRAN-
STON, as State Controller, etc., Respondent.

Beardsley, Hufstedler & Kemble, Charles E. Beardsley, Seth M. Hufstedler, John Sobieski and Harry L. Hupp for Petitioner.

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

PEEK, J.—Petitioner, the widow of the late Judge Joseph G. Gorman, former Judge of the Superior Court in and for the County of Los Angeles, seeks to compel the respondent Controller of the State of California to approve her application for benefits as the widow of a retired judge pursuant to the provisions of the Judges' Retirement Law. (Gov. Code, §§ 75000-75108.) The Controller opposes the application, at least in part, in reliance on an opinion of the Attorney General (45 Ops.Cal.Atty.Gen. 85) that prior to his death Judge Gorman had not executed a consent to retirement within the meaning of the statute (Gov. Code, § 75060), so as to qualify petitioner for the benefits she seeks.

The facts are not in dispute. On or before November 7, 1964, Judge Gorman, planning to undergo surgery, signed a standard form letter of request for a disability retirement, addressed to the Governor and the Chief Justice, the latter as Chairman of the Judicial Council. The judge showed this letter, at that time undated and with a blank space for the name of a doctor who would attest to any disability, to his son. He requested that if he were to become disabled and unable to post the letter, his son should mail copies to the Governor and Chief Justice. Following surgery, Judge Gorman appeared to be making satisfactory progress when suddenly he lapsed into a coma resulting from a cerebral hemorrhage, and expired early on November 10 without having regained consciousness.

Thereafter a letter of request for disability retirement, signed by Judge Gorman and dated November 10, 1964, was received by the Governor. The name of a doctor was in the proper place, attesting to the judge's disability. Since there was some doubt as to whether the letter constituted a valid request and consent to disability retirement, the opinion of the Attorney General was requested. It was his view that the consent was not executed as required by section 75060, and that the judge had not made a proper application for retirement for reasons of disability. (45 Ops.Cal.Atty.Gen. 85.)

The Governor and the Chief Justice certified to the Secre-

tary of State the facts as stated above and withheld approval of the application solely on the determination of the Attorney General that Judge Gorman had not validly consented to retirement. Their certificate further states: "We agree with the Attorney General that this issue of law should be determined by a court of competent jurisdiction. If there is a final judgment of a court of competent jurisdiction that such application and consent of Judge Gorman is legally sufficient, we approve his retirement. . . ."

Petitioner alleges that she has filed a formal claim for benefits with the Controller and, on information and belief, that the Controller has not acted on her application because he desires to have a court pass upon the validity of the application before he acts. She argues that her late husband's consent was validly executed subject to a condition subsequent, namely, his disability; that this condition subsequently occurred, thus completely effectuating his request for retirement.

Government Code section 75060 authorizes in subdivision (a) that a judge may retire for reasons of disability if he has met three requirements: (1) the judge must be, in fact, disabled; (2) the judge must consent to his retirement; and (3) the Governor and the Chief Justice must approve the retirement. There is no provision for determining whether the judge is or is not disabled save, perhaps, for the requirement that the Governor and the Chief Justice approve the retirement. In the instant case, of course, there is little question that Judge Gorman was disabled, and the Governor and the Chief Justice so certified. The more difficult question is whether Judge Gorman "consented" to his retirement within the meaning of the statute.

Subdivision (b) of section 75060 states: "Any judge who dies after executing an application evidencing his consent and before the approval of both of the designated officers has been obtained shall be deemed to have retired on the date of his death if the designated officers prior to the filling of the vacancy created by such judge's death, file with the Secretary of State their certificate of approval."

Subdivision (b) was added to section 75060 in 1962 following the deaths of disabled judges before the necessary approval was obtained. It authorizes a judge to be placed on a retired status and his spouse to receive benefits accordingly even though he may die before the Governor and the Chief Justice actually execute the requisite certificate. Concurrently with the enactment of subdivision (b) the Legislature adopted

444

an urgency clause in the following language: "In many instances, a judge is stricken with a serious illness on a week-end or a holiday when it is not possible to secure the written approval of the Governor and the Chief Justice of the Supreme Court to the application of the judge for disability retirement. If such approval is obtained before the judge dies, the benefits provided by law for his spouse are preserved; if the approval is not obtained prior to his death, all such benefits are lost. In order to cure this inequity and thus avoid the recurrence of a situation which has arisen twice within the last 60 days, it is necessary that this act take effect immediately." (Stats. 1963, First Ex. Sess. 1962, ch. 61, p. 353, § 2.)

■ It has long been settled in this state that pension legislation is to be liberally construed. In *Jorgenson* v. *Cranston,* 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297], the rule is stated thus: " '. . . [P]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly.' "

Section 75104.4 of the Government Code relating to judges retirement supports the foregoing view: "The Legislature hereby finds and declares that the payment of allowances to the surviving spouse of a judge pursuant to this section, as amended at the 1959 Regular Session of the Legislature, serves a public purpose in that it promotes the public welfare by encouraging experienced jurists to continue their service in the expectation that the Legislature will fairly provide for their surviving spouses under changing circumstances, as the Legislature is now doing for spouses of judges who have heretofore died. Continued service by, and increased efficiency of, judges secure in this knowledge will more than compensate the State for any increased expense for allowances to surviving spouses provided by the amendment enacted at the 1959 session of the Legislature."

■ The Controller raises the question whether the preparation of a letter of retirement in advance of a disability does not, in fact, delegate the power of retiring a judge who has prepared such a letter to the Chief Justice and the Governor. There is, however, no real question of delegation of authority presented herein. The consent given by the judge was *his* con-

sent, expressed over his signature. The fact that it was to take effect on the happening of an objective condition to which the Governor and Chief Justice were to certify does not make it any the less *his*. To argue, as the Controller does, that the Chief Justice and the Governor may retire any judge who has executed such a consent "if they feel he is incapacitated" appears to imply that such action might be taken at whim or bias on the part of those officials. We cannot presume that they would act in flagrant disregard of their statutory duty in such cases. Disability is an objective condition, and while its limits are perhaps subject to disagreement it is nevertheless sufficiently certain to condition the happening of an operative event.

It is also contended by the Controller that a judge who wishes to retire for disability must evidence his intention to so retire *after* the onset of the disability. In this connection it is argued that even though it be conceded that Judge Gorman intended to retire if he became disabled, and in fact formalized this intention by signing a letter of resignation to take effect upon his becoming disabled, still the equities of the situation are no greater than had Judge Gorman regained consciousness for a few moments and directed that the request to retire be forwarded to the Governor and then lapsed into unconsciousness and expired. In such a situation, the Controller contends, the Legislature, in enacting subdivision (b) of section 75060, intended to exact still a further formality, that is, the execution of a consent. But subdivision (a) requires only that a judge "consent" to his retirement, and in subdivision (b) it is stated only that his death occur "after executing an application evidencing his consent." There is no language in section 75060 which requires the consent to be executed before or after the operative fact which brings an anticipated disability into being. Nor is there anything in the language or in the authorities to which we are referred which precludes a conditional consent. (See *People* v. *Porter,* 6 Cal. 26.)

It is further argued that to construe section 75060 in the manner urged by petitioner would be to authorize a disability benefit in almost every instance, since by the mere signing of an advance consent a judge will have been deemed to have retired for disability at such time as he becomes disabled, even if minutes before death. But the Controller overlooks the full commitment which Judge Gorman made in the instant case. The situation is not one in which an all purpose consent

was signed and made ready for any eventuality. It appears that the judge, with a specific situation in mind, irrevocably committed himself to a position based on eventualities over which he had no further control. The consent was not only executed by him, but he had authorized and directed that it be completed and forwarded, if certain conditions were fulfilled. When these conditions developed the letter was completed and forwarded as he had directed. Since these acts were done pursuant to his direction and in the manner which he had directed, it must follow that he consented thereto.

We distinguish this case from that in which a judge does not, by his own act, irrevocably place himself in a position where he must be retired upon the occurrence of a condition or conditions without reliance on the exercise of a subsequent and intervening act of discretion to effectuate his consent to such retirement. In the instant case only the administrative acts of completing and forwarding the letter pursuant to instructions, were left to be done. The fact that the person charged with this responsibility failed to carry it out until after the judge's death should not detract from what otherwise appears to be his firm commitment to retirement upon first becoming disabled. (See *Watenpaugh* v. *State Teachers' Retirement System*, 51 Cal.2d 675 [336 P.2d 165].)

We are thus persuaded to the conclusion that Judge Gorman's consent committed him to a retired status while he survived although he may thereafter have made a complete recovery. The fact that his death occurred before rather than after necessary administrative action preliminary to presenting the consent to the Chief Justice and Governor for their approval does not alter our conclusion that he was in a retired status immediately upon the happening of the event which conditioned his consent, for purposes of subdivision (b) of section 75060.

Arguments which go to discrepancies in benefits which surviving spouses of judges may receive, depending upon whether particular judges had retired for disability prior to death and their lengths of service, do not meet the instant issues. Such matters are for the Legislature and our concern is with compliance with the statutes as now provided. In construing those enactments we are mindful that the Legislature has attempted to provide for a better qualified and more efficient judiciary. It has made clear that it intends to secure, equally with the purpose of encouraging retirement of those judges who are not able to perform their duties, the further purpose of providing an incentive to qualified members of the bar to accept judicial

responsibilities by ensuring that the families of those judges who become incapacitated are not left in financial need. Section 75060 is intended to provide for the surviving spouse of any judge who retires due to disability. Petitioner herein fairly comes within this class, and the fact that her late husband was not conscious during his last hours while he was disabled after giving explicit instructions which, if carried out, would have qualified her for benefits, should not in itself operate to deprive her of such benefits.

Let a peremptory writ of mandate issue directing the Controller to act upon petitioner's application in consideration of the valid consent to a disability retirement on the part of Judge Gorman.

Mosk, Acting C. J., McComb, J., Peters, J., Tobriner, J., White, J.,* and Roth, J. pro tem.,** concurred.