[Civ. No. 2800. Fifth Dist. Dec. 1, 1976.]

VIOLA KUNTZ, Plaintiff and Appellant, v.
KERN COUNTY EMPLOYEES' RETIREMENT ASSOCIATION,
Defendant and Respondent.

416

**COUNSEL**

Chain, Younger, Jameson, Lemucchi, Busacca & Williams, Paul Busacca and James E. Noriega for Plaintiff and Appellant.

Ralph B. Jordan, County Counsel, and Donald H. Rubin, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**GARGANO, Acting P. J.**—Plaintiff is the widow of Perry M. Kuntz, who died as the result of a pulmonary embolus (a blood clot in the lung) he

sustained as a consequence of heart surgery. At the time of his death, Mr. Kuntz had been a member of defendant Kern County Employees' Retirement Association for many years, and the sole issue is whether there was substantial evidence to sustain the trial court's finding that the cause of death was not service-connected within the ambit of section 31787 of the Government Code.[1] Stated in another manner, the only question presented in this appeal is whether plaintiff's evidence established, as a matter of law, that her deceased husband died as the result of an injury or a disease arising out of and in the course of his employment so as to entitle plaintiff to the service-connected death allowance established by section 31787. This section is found in the County Employees Retirement Law of 1937 (Gov. Code, tit. 3, div. 4, pt. 3, ch. 3) and reads in pertinent part as follows: "If any member dies as the result of injury or disease arising out of and in the course of his employment, and he is survived by a spouse to whom the member was married prior to sustaining such injury or disease or by an unmarried child under the age of 18, whether such surviving spouse or child was designated as beneficiary or not, the surviving spouse, if any, otherwise the guardian of such child may elect instead of the death benefit provided for by Section 31780, that there shall be paid to such surviving spouse, if any, otherwise to such surviving child or children collectively, in equal monthly installments, an annual death allowance equal to one-half of the member's final compensation until such surviving spouse dies, or if there is no qualified surviving spouse, or, if the surviving spouse dies before all of the children of the deceased member attain age 18 or marry, to his children under age 18 collectively until every child dies, marries, or attains age 18."

The decedent, Perry M. Kuntz, commenced his employment with Kern County in the year 1959. He was employed in the parks department and his duties consisted of transporting prisoners from the Kern County Industrial Farm and Road Camp to the various county parks, and supervising their work in the parks.

In 1963, decedent was transferred from the parks department to the Kern County Industrial Farm and Road Camp and was assigned to work as a guard at the Lerdo Facility; this facility contained between 225-350 inmates, and it was decedent's function to make certain that no one escaped and to prevent physical altercations between the prisoners. A

---

[1]Unless otherwise stated, all statutory references are to sections of the Government Code.

few months later, decedent was transferred to Apache Camp and he worked at that installation as a guard for approximately four years. Then he was assigned to work at the Arvin Camp, a center used primarily for the rehabilitation of alcoholics; he worked at the camp for approximately one year. In 1968, decedent was reassigned to the Lerdo Facility to work as a guard. Two years later the facility was transferred to the Kern County Sheriff's office and decedent became an employee of that department.

Commencing in 1964, decedent noticed that he incurred chest pains and a shortness of breath when working at high altitudes. Because these conditions were associated with a heart problem, he commenced to use the drug Digoxin; occasionally he also used the drug Nitroglycerin. During the following year, decedent developed high blood pressure; in addition, it was discovered that he was mildly diabetic. Decedent took medication to control the high blood pressure and the diabetes.

In 1970, decedent's chest pains occurred more frequently and his shortness of breath came more readily. About a year later, decedent sustained a cerebral artery thrombosis which partially paralyzed his right side. He recovered from the stroke sufficiently to return to work, but the illness left him with a slight speech impediment, a limp and an inability to grasp normal writing instruments such as a pen or pencil; the chest pains were more frequent, and they even occurred when he was walking on level ground.

In February 1972, a medical examination disclosed that decedent had an arteriosclerotic heart disease (i.e., a thickening and hardening of the arteries). In April of that year, a coronary arteriogram was performed, and it was discovered that the left ventricle of decedent's heart was hypokinetic. The right coronary artery was obstructed completely, and the left coronary artery appeared aneurysmal. The circumflex artery showed an 80-90 percent obstruction, and there was a 90 percent constriction of the left anterior descending coronary artery.

On May 17, 1972, decedent was taken into surgery and a coronary artery by-pass was performed; the saphenous vein in the leg was removed and was grafted in place of an obstructed artery. After the surgery, decedent sustained an embolus in the left brachial artery; the blood clot was removed surgically. Then, decedent sustained a pulmonary embolus and, as a result of the embolus, died on May 28, 1972;

between the date of the coronary artery by-pass surgery on May 17, and the date of his death on May 28, decedent never left the hospital.

Following her husband's death, plaintiff applied for the service-connected death allowance established by section 31787; the application was set for hearing before a referee appointed by defendant's board of retirement. We briefly summarize the remaining evidence presented at the hearing.

During the period that decedent was employed as a guard at the various facilities operated by the Kern County Industrial Farm and Road Camp, and later by the Kern County Sheriff's office, he was extremely fearful of his own safety. For example, he became "uptight" after disturbances between prisoners; when he had to search for weapons, decedent would shake. He also became "uptight" while working at the Apache Camp when the telephone lines froze during winter, impairing the camp's communication system.

In 1968, after decedent returned to the Lerdo Facility, his superior noticed that Mr. Kuntz' hands trembled whenever he went into the barracks at night to count prisoners; in fact, decedent, with his own money, purchased a walkie-talkie set so that he could acquire help quickly if he were attacked by a prisoner. It also was noticed that when Mr. Kuntz was called back after working hours due to an ongoing disturbance or suspected trouble, he would become very tense and nervous.

As time progressed, decedent became very frustrated with his job because he could not strike back when verbally or physically abused by prisoners. On one occasion, after he was kicked by a delirious and violent prisoner, decedent told his son, who had witnessed the incident, that he was angry because he could not kick back; as he related the incident, decedent started to suffer chest pains and had to lie down. Following his stroke in 1971, decedent became very apprehensive as to the obvious limitations of his physical ability to perform his job.

The only medical evidence presented was a written report prepared by Dr. Alan Frank. After summarizing decedent's employment and medical history, the doctor reported that decedent had been experiencing progressive sclerosis of his coronary arteries for perhaps 35 years prior to his death. He also reported that in his opinion ". . . the emotional and

physical stress that [decedent] experienced as a result of his employment as a correctional officer by the County of Kern materially aggravated and accelerated the process of sclerosis within his coronary arteries thereby hastening the onset of complications of [the] condition and in particular the onset of coronary artery insufficiency."

At the conclusion of the hearing, the referee concluded that decedent's ". . . disability . . . did not arise from or out of his employment. . ." with Kern County. Then, when defendant's board of retirement adopted the referee's decision and denied plaintiff's application for the service-connected death allowance, plaintiff petitioned the superior court for a writ of mandate to review the administrative decision. (Code Civ. Proc., § 1094.5.) The matter was submitted to the court on the transcript of the hearing conducted by the referee and the documentary evidence introduced at that hearing.

In September 1975, the superior court, after reweighing the evidence pursuant to the mandate of *Strumsky* v. *San Diego County Employees' Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], entered judgment in favor of defendant. The court found in essence that Perry M. Kuntz was employed by Kern County as a correctional officer from November 1959 until his death on May 28, 1972, that in the course of his employment he was subjected to physical and emotional stress ordinarily associated with law enforcement work in dealing with prisoners, and that he feared for his safety and expressed frustration because his duties prevented him from retaliating when prisoners verbally or physically abused him. The court further found that prior to his death, decedent developed a pulmonary embolus causing his death and that the ". . . pulmonary embolus developed as a complication of his coronary bypass surgery with saphenous vein graft, . . ." In addition, the court found that the coronary by-pass surgery with the saphenous vein graft was performed upon decedent ". . . as a result of [his] coronary artery sclerosis, which in turn was due to or a consequence of diabetes mellitus." Lastly, the court found that the emotional and physical stress experienced by decedent as the result of his work as a correctional officer with Kern County *materially aggravated and accelerated his coronary artery sclerosis.* From these findings, the court concluded that the plaintiff was not entitled to the service-connected death allowance established by section 31787 because she ". . . failed to sustain her burden of establishing that her deceased husband's death was the proximate result of an injury or disease arising out of his employment."

At the outset, it should be noted that it is very clear that section 31787 grants the widow of a deceased member of a county retirement association a service-connected death allowance in the event that the death results from an injury or disease arising out of and in the course of the employment even though it results from a preexisting disease that was accelerated or aggravated by the decedent's work. As this court observed in *Grant* v. *Board of Retirement* (1967) 253 Cal.App.2d 1020, 1025 [61 Cal.Rptr. 791], ". . . to prove a connection between a man's work and his disease, no traumatic injury is necessary, . . ."; there is a sufficient connection although ". . . the contribution of the employment to the [disease resulting in the death was only] an acceleration or aggravation of pre-existing disease." As we also observed in that case, ". . . the exertion or strain alleged to have arisen from his work need not be unusual or other than that which occurred in the normal course of employment."

Furthermore, the decisions interpreting the workers' compensation law of this state (Lab. Code, div. 4), which adhere to the proposition that an employer takes his employee as he finds him, and that a disability from a preexisting injury or disease, or a death resulting therefrom, is compensable if the employee's work aggravates or accelerates the injury or disease, are authoritative. (See *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 282-283 [113 Cal.Rptr. 162, 520 P.2d 978]; *Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]; *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 11.01 [4][b]; 11.02 [1] and [2], 11.03 [5][e], 14.04 [2][f].) While the County Employees Retirement Act of 1937 and the workers' compensation law serve diffferent functions, they are related in subject matter and harmonious in purpose. (*Minor* v. *Sonoma County Employees Retirement Bd.* (1975) 53 Cal.App.3d 540, 544 [126 Cal.Rptr. 16]; *Pathe* v. *City of Bakersfield* (1967) 255 Cal.App.2d 409, 414-415, 416 [63 Cal.Rptr. 220].) Both laws are designed for the comfort, health, safety and general welfare of employees;[2] as to the payment of death and disability benefits, each contains essentially similar language;[3] both must be construed liberally.[4]

---

[2]Compare California Constitution, article XX, section 21, with Government Code, section 31451.

[3]Each law uses the phrase "arising out of and in the course of employment."

[4]Compare Labor Code, section 3202, with 38 Cal.Jur.2d (1957) Pensions, section 5, page 316.

It is the rule that when words used in a statute have acquired a settled meaning through judicial interpretation, the words should be given the same meaning when used in another statute dealing with an analogous subject matter; this is particularly true, where, as here, both statutes were enacted for the welfare of employees and are in harmony with each other. (See 73 Am.Jur.2d (1974) Statutes, § 165, p. 369; cf. *Union Iron Wks.* v. *Industrial Acc. Com.* (1922) 190 Cal. 33, 43-44 [210 P. 410].)

Defendant apparently does not challenge the thesis that an aggravation or acceleration of a preexisting disease by an employment-related factor will support a conclusion that the disease has arisen out of and in the course of employment within the ambit of section 31787; it has not argued to the contrary in this appeal. Defendant asserts, instead, that the trial court's judgment is sustainable on the ground that decedent's death was not the result of the aggravation or acceleration of his preexisting arteriosclerosis since he did not die directly from that disease, but from an intervening act—the pulmonary embolus resulting from his surgery. Defendant relies upon *Lindsay* v. *County of San Diego Ret. Bd.* (1964) 231 Cal.App.2d 156 [41 Cal.Rptr. 737] to insist that a service-connected death allowance was not payable to plaintiff for this reason.

In *Lindsay,* the employee, a deputy sheriff, underwent surgery to correct an ulcer he claimed was caused by the stress and strain of his employment; the surgery resulted in permanent incapacitation. The employee's claim for service-connected disability benefits under the County Employees Retirement Act of 1937 was disallowed by the county board of retirement, and he petitioned the superior court for a writ of mandate and then appealed from an adverse judgment entered in favor of the retirement board. The judgment was affirmed.

■ We are not persuaded by defendant's argument. In the case at bench, the trial court expressly found that decedent's preexisting heart disease was materially aggravated and accelerated by the emotional and physical stress of his work. This finding carries with it the clear implication that decedent's disease arose out of and in the course of his employment and that his work accelerated the need for the heart surgery which ultimately resulted in his death. The court also found that the pulmonary embolus that caused the death developed as a complication of the surgery. As a consequence, the court necessarily found that there was a direct and traceable connection between decedent's death and the emotional and physical strain arising from his work as a correctional

officer. To recover a death benefit under a pension plan it is not necessary for the death to be the "direct" result of the injury or disease; it is sufficient that the injury be a mediate cause of the death. (See 38 Cal.Jur.2d (1957) Pensions, § 26, pp. 346-347.) As the California Supreme Court succinctly explained in *Dillard* v. *City of Los Angeles* (1942) 20 Cal.2d 599, 602-604 [127 P.2d 917], the death of a member of a retirement system "results" from an employment-related injury, thus qualifying his dependents for death benefits, if there is a sufficient nexus between the death and a work-related injury so that it reasonably can be said that the death is "traceable" to the injury.

The case of *Lindsay* v. *County of San Diego Ret. Bd., supra,* 231 Cal.App.2d 156, is distinguishable because the court's decision can be justified on the theory that there was substantial evidence to prove that the employee's personal and marital problems, not his employment as a deputy sheriff, caused his ulcer. On the other hand, the recent decision of the California Supreme Court in *Strumsky* v. *San Diego County Employees' Retirement Assn., supra,* 11 Cal.3d 28, is more directly in point. There, the employee, a sergeant in the San Diego County Marshal's office, had suffered from hypertension since boyhood due to a congenital narrowing of the aorta. Later, his condition was aggravated by progressive arteriosclerosis which became advanced during his employment in the marshal's office; as in this case, there was evidence that the employee's arteriosclerotic condition was accelerated by the stress and tension inherent in his occupation. Also as in this case, surgery was performed on the employee to correct the condition. Lastly, as here, the employee died as a result of complications arising from the surgery. The employee's widow then applied for a service-connected death allowance pursuant to section 31787, and her application was denied.[5] She petitioned the Superior Court of San Diego County for a writ of mandate and her petition was denied. The Supreme Court reversed the judgment because the lower court in denying the writ used the substantial evidence test instead of reweighing the evidence as it was required to do. However, the high court, in the interests of judicial economy, noted that the applicant's evidence would have supported a finding that the employee's death was service-connected in nature. (*Supra,* 11 Cal.3d at p. 46, fn. 18.)

---

[5]The only real difference between *Strumsky* and the present case is that in *Strumsky* there was considerable conflict in the evidence concerning the extent to which the stress and tension of the decedent's occupation affected the development of the arteriosclerosis.

Because the trial court's findings in the instant case are supported by substantial evidence, because those findings are inconsistent with the judgment, and because the amount of the service-connected death allowance is not in dispute, the judgment is reversed; the court is directed to modify its conclusions of law and to enter judgment in favor of the plaintiff in accordance with the views expressed in this opinion.

Thompson, J.,* and Goldstein, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.