[Civ. No. 17744. Third Dist. Dec. 11, 1978.]

PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
CARYL E. McCLARY, Respondents.

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, and William J. Power, Deputy Attorney General, for Petitioner.

William Dennis Heekin for Respondents.

**OPINION**

**CARR, J.\***—The Public Employees' Retirement System (PERS) seeks review of a decision of the Workers' Compensation Appeals Board (Board) following reconsideration allowing respondent McClary medical-legal costs incurred to prove that the death of her husband was industrially caused.

Dr. Robert W. McClary was employed by the Department of Corrections as chief medical officer at the Sierra Conservation Center until his death due to a heart attack in August 1974. Because of his particular position, his widow qualified for a special death benefit if his death was of industrial causation.[1]

Respondent Caryl E. McClary (McClary) applied for such special death benefit. Because the industrial cause of death was disputed, PERS, in accord with Government Code section 21363, requested the Board to determine if Dr. McClary's death was industrially caused.

After a hearing, the workers' compensation judge found Dr. McClary's death arose out of and occurred in the course of his employment, and

---

\*Assigned by the Chairperson of the Judicial Council.

[1]In 1974, Government Code section 21363 provided a special benefit if death was industrial "if the deceased was a patrol, *prison,* state safety or local safety member." "Prison" member was deleted by a 1975 amendment to section 21363 (Stats. 1975, ch. 234, § 10). Department of Corrections employees were still subject to the special death benefit provisions, but as "state industrial members" pursuant to legislation in 1974. (Stats. 1974, ch. 1439, §§ 1.5, 2, 9.)

ordered PERS to pay the medical-legal costs ($845.27) of proving industrial causation through expert medical testimony. The Board, in its opinion on reconsideration, affirmed the hearing officer's decision. This court granted a writ of review.

The sole issue confronting us is whether PERS is subject to assessment of medical-legal costs when it submits a claim for a special death benefit to the Board for a determination of industrial causation pursuant to Government Code section 21363. This is an issue of first impression.

Petitioner PERS asserts the sole authority of the Board under section 21363[2] is to determine industrial causation; that medical-legal costs are "compensation" (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 231 [133 Cal.Rptr. 517, 555 P.2d 303]), not an allowable award under the statute in question; and that Labor Code section 4600, which permits reimbursement of medical-legal costs in workers' compensation cases, is not applicable herein.

At the time in question, section 21363 provided, inter alia, "[T]he Workmen's Compensation Appeals Board, *using the same procedure as in workmen's*[3] *compensation hearings,* shall in disputed cases determine whether the death of a member was industrial." (Italics added.)

Labor Code section 4600 provided, as pertinent herein, "[I]n accordance with the rules of practice and procedure of the appeals board . . . the dependents of a deceased employee, shall be reimbursed for expenses reasonably, actually, and necessarily incurred for . . . medical reports, and medical testimony to prove a contested claim. . . ."

We do not perceive the Board's role to be as narrow and restrictive as advocated by petitioner.

The Board is required to use the same procedures employed in workers' compensation hearings. The medical-legal costs part of Labor Code section 4600 has been construed for purposes of retroactive application, as a provision that "relates to procedure." (*Kaiser Co.* v. *Industrial Acc. Com.* (1952) 109 Cal.App.2d 54 [240 P.2d 57].) The Supreme Court, holding in *Adams* v. *Workers' Comp. Appeals Bd., supra,* 18 Cal.3d 226, that such costs could be considered compensation for the

---

[2]All references are to the Government Code unless otherwise indicated.

[3]In our enlightened era of equality of the sexes, in 1975 the Legislature changed "Workmen's" to "Workers'." (Stats. 1975, ch. 234, § 10.)

purpose of assessment of the 10 percent penalty imposed by Labor Code section 5814, expressly overruled any inconsistent holdings in *Hockett* v. *Industrial Acc. Com.* (1959) 170 Cal.App.2d 155 [338 P.2d 604]; *Ramsey* v. *Workmen's Comp. App. Bd.* (1969) 2 Cal.App.3d 693 [83 Cal.Rptr. 51]; and *Vogh* v. *Workmen's Comp. App. Bd.* (1968) 264 Cal.App.2d 724 [70 Cal.Rptr. 722]. Each of these cases held costs were not compensation and not subject to the penalty provision. *Hockett* v. *Industrial Acc. Com., supra,* 170 Cal.App.2d 155, cited *Kaiser Co.* v. *Industrial Acc. Com., supra,* 109 Cal.App.2d 54, as authority for the concept that medical-legal costs are in the nature of costs, not compensation. Yet the Supreme Court did not expressly overrule *Kaiser* but distinguished it as dealing with an entirely different issue from that presented in *Adams* (see 18 Cal.3d at p. 231, fn. 4). In so doing, the Supreme Court recognized the dual nature of medical-legal costs. For purposes of benefits under division 4, Labor Code, on which additional compensation by way of penalty may be awarded for delayed payments under section 5814, such costs can be considered compensation. For purposes of determining industrial causation pursuant to section 21363, such costs are procedural in nature.

 For reasons herein set forth, we conclude medical-legal costs incurred by survivors of a PERS member to prove industrial causation of death may properly be awarded by the Board.

The scope of our review, delineated in section 21026.4 is "to determine whether the appeals board acted without or in excess of its powers, or unreasonably, or whether its act was procured by fraud."[4] The allegations herein are that the Board acted (1) without and in excess of its powers and (2) that it acted unreasonably.

Petitioner's assertion that the power of the Board is limited to a determination of industrial causation ignores the benign public policy underlying both the worker's compensation and the PERS laws. The retirement system for public employees was first enacted in 1931, the stated purpose being "to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees and to that end providing a retirement system consisting of retirement compensation and death

[4]Writ of review is the applicable means of judicial review of a final decision of the Board in workers' compensation cases. (Lab. Code, §§ 5950-5956.) The scope of review is the same except in workers' compensation cases the reviewing court may also determine if the award is supported by substantial evidence and if the findings of fact support the award. (Lab. Code, § 5952.)

benefits." (Stats. 1931, ch. 700, § 1, p. 1442.) In 1945 the Legislature amended the retirement act to provide special benefits to certain delineated public employees whose work was considered more hazardous than other public service and whose death was industrial in origin.[5] The original statute provided the special death benefit for survivors if the "[member's] death was industrial, as determined by the Industrial Accident Commission[6] in the same manner as for all other State or city employees, . . ." (Stats. 1945, ch. 123, § 1, p. 606.) In 1947, section 21363 was again amended to substitute the phrase "if his death was industrial as determined by the Industrial Accident Commission *using the same procedures as in workmen's compensation hearing*" for "if his death was industrial, as determined by the Industrial Accident Commission *in the same manner as for all other State or city employees.*" (Italics added.)

The Legislature enacted the workmen's compensation, insurance and safety act in 1917.[7] (Stats. 1917, ch. 586, § 2, p. 833.) The stated social public policy for enactment was that "A complete system of workmen's compensation includes adequate provision for the comfort, health, safety and general welfare of any and all employees and those dependent upon them for support to the extent of relieving from the consequences of any injury incurred by employees in the course of their employment, irrespective of the fault of any party; . . ."[8]

▮ In both the workers' compensation and Public Employees Retirement System, the Legislature has enacted a comprehensive system of death benefit compensation designed to mitigate hardship for dependents of public and nonpublic employees whose deaths arise out of the course of employment. Each statutory system is subject to liberal construction by the courts. In workers' compensation cases, the constitutional mandate of article XIV, section 4, California Constitution, that workers' compensation "accomplish substantial justice in all cases expeditiously, inexpensively and without encumbrance of any character" is complemented by

[5]Section 21363 covered patrol, prison, state safety or local safety members. Section 21363.5, enacted in 1947, covered forestry members; sections 21363.3 and 21363.4 (1959) covered state prison or Department of Corrections members and harbor police.

[6]The precursor of the Workmen's Compensation Appeals Board, now the Workers' Compensation Appeals Board.

[7]This legislation was preceded by the Roseberry Act in 1911 (Stats. 1911, ch. 399) permitting optional coverage of workers' compensation by employers and the Boynton Act in 1913 (Stats. 1913, ch. 176, p. 279) under which coverage was compulsory.

[8]Doubtless engendered by the adoption in 1914 of article XX, section 17½, California Constitution, empowering the Legislature to provide for "the comfort, health, safety and general welfare of any and all employees."

Labor Code section 3202 that the compensation laws shall "be liberally construed 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.'" (*Jones* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648].)

In *Gorman* v. *Cranston* (1966) 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133], the Supreme Court defined the same liberal construction for pension legislation: "It has long been settled in this state that pension legislation is to be liberally construed. In *Jorgenson* v. *Cranston*, 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297], the rule is stated thus: '" . . . [P]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, *such legislation should be applied fairly and broadly*." '" (Italics added.)

The underlying rationale of both statutory schemes is the same; though serving ostensibly different functions, "they are related in subject matter and harmonious in purpose." (*Kuntz* v. *Kern County Employees' Retirement Assn.* (1976) 64 Cal.App.3d 414, 421 [134 Cal.Rptr. 501]; see *Minor* v. *Sonoma County Employees Retirement Bd.* (1975) 53 Cal.App.3d 540, 544 [126 Cal.Rptr. 16]; *Pathe* v. *City of Bakersfield* (1967) 255 Cal.App.2d 409, 416 [63 Cal.Rptr. 220].)[9]

 Against this background, we consider the allowance of medical-legal costs to PERS applicants in a death case where industrial causation is disputed. PERS, in accord with section 21363, requested a determination if Dr. McClary's death was industrial. The Board must make this determination "using the same procedures as in workers' compensation hearings, . . ." (§ 21363.) Of note are Labor Code sections 4707 and 4708. Section 4707 provides no benefits except allowable burial expenses shall be awarded under "this division" (Lab. Code, div. 4), on account of the death of a PERS employee unless it is determined that the special death benefit provided by PERS will not be paid to the survivors; except if the total death allowance under PERS is less than that paid under workers' compensation, the survivors are entitled to the difference. Labor Code section 4708 sets forth: "Upon application of any party in interest for a death benefit provided by this division on the death of an employee

---

[9]These cases concern county employees' retirement system but the provisions are substantially similar and are now embraced within PERS (see §§ 20042. 45310.5).

member of [PERS], the latter shall be joined as a defendant, and the appeals board shall determine whether the death resulted from injury or illness arising out of and in the course of his employment, for the purpose of enabling the appeals board to apply the provisions of this division and the board . . . to apply the provisions of the Public Employees' Retirement Law."

Thus the dependents of a deceased PERS member with special benefit coverage are not entitled to the workers' compensation death benefits afforded by Labor Code section 4702, except funeral expenses unless the total PERS death benefits are less than the workers' compensation benefits.

The Board herein determined the death was industrial and allowed medical-legal costs consisting of the cost of medical reports and photocopying of medical and other germane records.

Whether the "procedures" referred to in section 21363 include the allowance of medical-legal expenses against the PERS must be determined in light of the purpose and intent of the statute. (See *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 157-158 [137 Cal.Rptr. 154, 561 P.2d 244].) ■ "It is [also] a well established rule that courts are bound to give effect to statutes according to the usual, ordinary import of language employed in framing them." (*Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 429 [133 Cal.Rptr. 809].)

■ Labor Code section 4600 expressly provides in the second paragraph thereof that "In accordance with the rules of practice and *procedure* of the appeals board, the employee, or the dependents of a deceased employee, shall be reimbursed for expenses reasonably, actually, and necessarily incurred . . . to prove a contested claim." (Italics added.) The use of the word "procedures" and "procedure" in the two statutes, both enacted for the welfare of employees or their dependents and in harmony with each other, indicates a strong legislative intent that expenses of proving a disputed claim are allowable to both classes of claimants. It is contrary to the beneficent legislative intent to limit recovery of medical-legal costs only to those persons before the Board with workers' compensation claims. Since the 1959 amendment to Labor

Code section 4600, even an unsuccessful claimant for workers' compensation benefits may recover medical-legal costs. (*Turudich* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d·455 [47 Cal.Rptr. 21].) Carried to its logical conclusion, petitioner's position would create the anomalous situation that a PERS applicant who proved industrial causation for special death benefits which, with all PERS death allowances, was less than the workers' compensation death benefits would be entitled to the difference in the two benefits, under division 4, Labor Code (Lab. Code, § 4707), and entitled to medical-legal costs pursuant to Labor Code section 4600, while the PERS applicant whose death benefits equalled or exceeded workers' compensation benefits would not be entitled to costs.

Moreover, the clear purpose of allowing reimbursement of costs is to enable an applicant to secure expert professional services to establish the validity of a disputed claim and to ensure payment for such services—irrespective of the risks of the litigation or the financial condition of the applicant. It ensures equal access for all without regard to ability to pay to the forum. To allow such expenses in workers' compensation cases and deny them in matters before the PERS would create an unreasonable inconsistency and defeat the legislative motive behind the statute.

The order of the Board is affirmed.

Regan, Acting P. J., concurred.

**PARAS, J.,** Dissenting.—While the result of the majority is a fair one, it should have been left to the Legislature to reach or reject as it saw fit. In my view the existing legislative expression does not permit the allowance of costs.

The Legislature has authorized the Board to determine the industrial (vel non) nature of a PERS member's death "using the same procedure as in workers compensation hearings." (Gov. Code, § 21363.) The majority has interpreted "procedure" to include the right to an award of costs. I cannot agree.

Procedure is defined as "[t]he mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right . . . the machinery, as distinguished from its product." (Black's Law Dict. (Rev. 4th ed. 1968) pp. 1367-1368.) Costs are money, a matter of substance and not procedure.

Moreover the statute refers to the same procedure as in workers' compensation *hearings,* not workers' compensation *cases,* thus confirming further the Legislature's restrictive meaning. Money (costs) cannot possibly be a "procedure . . . in workers' compensation hearings."

Therefore I dissent.

Petitioner's application for a hearing by the Supreme Court was denied February 9, 1979. Bird, C. J., did not participate therein.