[Civ. No. 57356. Second Dist., Div. Four. Dec. 19, 1980.]

MARY HENRY, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC
EMPLOYEES' RETIREMENT SYSTEM et al.,
Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Defendants and Appellants.

Lawrence B. Trygstad and Richard J. Schwab for Plaintiff and Respondent.

OPINION

**WOODS, J.**—The Board of Administration of the Public Employees' Retirement System has appealed from a judgment granting peremptory

writ of mandate. At issue is an employee's right to redeposit contributions into the Public Employees' Retirement System, by installment payments withheld from her monthly pension.

Mary Henry was a classified employee of the Los Angeles City School District from 1952 to 1969, and earned over 17 years of service credit as a member of the Public Employees' Retirement System (hereinafter referred to as PERS). In 1969, she obtained employment as a teacher (certificated employee) of the Los Angeles Unified School District and became a member of the State Teachers' Retirement System. On January 28, 1969, she withdrew her accumulated contributions on deposit with PERS.

On July 13, 1976, while teaching, respondent suffered a massive heart attack, as a result of which she is totally disabled and has been unable to return to teaching.

In November 1976, after it was determined that she did not have sufficient time in the State Teachers' Retirement System to qualify for disability retirement, respondent communicated with PERS in an effort to redeposit the contributions she had previously withdrawn. It was determined that the cost to repurchase the 17 years of service credit would total approximately $13,000.

On February 22, 1977, she applied to redeposit her contributions in PERS by monthly payments of $168.40 per month for 96 months. In April 1977, she received two salary warrants, one in the sum of $266.80 and the other for $66.70, representing sick leave.

Respondent has offered to return the salary warrants to PERS for the purpose of deducting therefrom the initial redeposit contribution. She wishes then to retire and to have all future redeposit contributions deducted from her monthly pension checks.

Following a hearing the Board of Administration of the Public Employees' Retirement System denied Mary Henry's application to redeposit her previously refunded accumulated contributions by such installment payments.

A petition for writ of mandamus was brought in the superior court on August 26, 1977. The matter was heard on December 8, 1978, and a judgment granting the peremptory writ was entered. That judgment

commanded the board to set aside its decision and give respondent an opportunity to prove that she was, at the time of the application, an employee of the Los Angeles Unified School District on a payroll. If the board so found, then it was ordered to permit her to redeposit her accumulated contributions pursuant to her petition. Appellants contend that no legislative authority exists for the repayment schedule authorized by the superior court.

■■ The issue presented here is covered by three sections of the Government Code and one regulation adopted by the board. Government Code section 20654 provides for redeposit of retirement contributions in monthly installments "... over such period and subject to such minimum payments as may be prescribed by regulations of the board, ..." Section 20654.3 provides that a former member of PERS who is a member of the State Teachers' Retirement System may make such redeposits pursuant to section 20654, "prior to the member's retirement." The language of those sections would appear to require that all monthly deposits be completed prior to retirement. However, Government Code section 20685, subdivision (d), provides that a member who retires before payment of the total amount elected may choose to pay the balance by deductions from his retirement allowance "equal to those which he authorized as payroll deductions in accordance with section 20654."

Pursuant to section 20654, the board adopted the following regulation, found at California Administrative Code, title 2, section 575.1: "Any deposit of contributions elected on or after April 1, 1972, to be made in installments, must be made by payroll deduction upon such installment plan as may be elected by the member, subject to the following conditions:

"(a) Installments must be uniform for each payroll period.

"(b) The monthly installments may not be less than $15.00 or 2 percent of the salary ... subject to normal retirement contributions, whichever is greater.

"(c) The number of installments may not exceed 96 monthly ...."

The board denied respondent's application on two grounds: First, the installment payments would not be made prior to her retirement, as required by Government Code section 20654, and second, the installments would not be made by payroll deduction, as required by California Ad-

ministrative Code section 575.1. As we will hereafter explain, we have, concluded that Government Code section 20685 authorizes redeposit of contributions in the manner proposed by respondent.

■ Under California law, sick leave benefits paid to an employee while absent from employment due to illness have consistently been held to constitute a continuation of salary. At 57 Ops.Cal.Atty.Gen., pages 318, 319-320 (1974), the Attorney General considered whether an employee may choose a retirement date earlier than the date on which he would have used up accumulated sick leave, and then take the sick leave benefits in a lump sum. The opinion states: "The effective retirement date of an employee is delayed until the expiration date of his accumulated sick leave. That is, assuming that the disabled retiree has 30 days of accumulated sick leave, the effective date of his retirement would be the first day after the expiration of 30 working days. *The employee would remain on the payroll* in the customary manner for the 30 working days *and would receive his normal compensation* through the application of his sick leave credits." (Italics added.)

In *Adams v. City & County of San Francisco* (1949) 94 Cal.App.2d 586, 597 [211 P.2d 368, 212 P.2d 272], the court defined sick leave as "compensation paid to an employee . . . ." In March of 1967, the Bureau of Retirement and Survivors Insurance of the Social Security Administration reviewed the State of California's sick pay system and concluded that sick leave payments made to state employees are "continuations of salary payments and therefore are wages for social security purposes." In 1979, the state Attorney General concluded that California's system for sick leave payments for state employees constitutes "payments . . . which are a continuation of salary during an excused absence for sickness, . . ." (62 Ops.Cal.Atty.Gen. 308, 315 (1979).) That opinion notes that departmental accounting of the State Board of Control credits actual sick leave payments to the appropriate salaries and wage accounts of state employees. (62 Ops.Cal.Atty.Gen. at pp. 313-314.)

Government Code section 18109 provides as follows: "Notwithstanding any other provision of law to the contrary, whenever sick leave benefits are provided to state employees pursuant to the state sick leave system, such benefits shall be construed to mean compensation paid to employees on approved leaves of absence on account of sickness."

The California Administrative Code at title 2, section 652, provides in part: "... For the purpose of computing the number of days or hours worked, time during which an employee is excused from working because of ... sick leave, ... shall be considered as time worked by the employee."

In the instant case, the administrative board found, at finding No. IV, that respondent had received two checks which it identified as "salary warrants" in payment for sick leave.

It is clear that sick leave benefits are in fact salary. This conclusion brings the respondent within the requirements of Government Code section 20685 and California Administrative Code section 575.1, in that it establishes that she received a salary from which a payroll deduction could be made.

Nonetheless, appellants contend that respondent cannot conform to the requirements of the California Administrative Code, in that she cannot authorize deduction of equal, uniform installments, having received only one check of sufficient size from which a redeposit installment could have been deducted. This argument is not persuasive. By authorizing the deduction of one installment payment from her salary, respondent will thus authorize the deduction of the same equal, uniform installment from all future pension checks.

Appellants argue that the trial court's conclusion results in the authorization of a practice which is fiscally unsound, requiring that present members will in effect be paying for respondent's pension with their contributions. The weakness in this contention is that it addresses not just respondent's position, but the general overall effect of Government Code section 20685. Whenever a member, making redeposit installment payments from salary, retires and elects to continue those payments as deductions from the member's pension, there exists the possibility that the full price of those benefits will never be repaid. Had the Legislature been concerned with the economic balance sought by appellants, subdivision (d) of Government Code section 20685 would not have been enacted at all.

We believe that the intent of the Legislature is better understood by and reflected in the language of the final paragraph of California Administrative Code section 575.1 which authorizes the modification of

any installment plan adopted by a member, "... upon the Board's finding that the existing plan is effecting a hardship for the member...."

■ "Laws relating to pension and retirement benefits are to be liberally construed to the end that the beneficent aims of such legislation may be achieved. [Citations.] We have observed that '[p]ension programs for public employees serve two objectives: to induce persons to enter and continue in public service and to provide subsistence for disabled or retired employees and their dependents. [Citation.]' (*Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 49 [89 Cal.Rptr. 61, 473 P.2d 765].)" (*Wheeler* v. *Board of Administration* (1979) 25 Cal.3d 600, 604-605 [159 Cal.Rptr. 336, 601 P.2d 568].)

■ Acknowledging this general rule of statutory construction in retirement law, appellants nonetheless argue that the precise language of the statute prohibits the repayment plan authorized here. Appellants note that the statute in referring to preretirement payroll deduction, uses the word "installments" in plural form. The purpose of inducing persons to enter and continue in public service and of providing subsistence for disabled or retired employees would not be met by adopting the strict and narrow construction of the language of the statute which appellants favor. The statute requires that an election to redeposit benefits must be made while the member or former member is still an employee; payroll deduction must be authorized and commenced prior to retirement; after retirement, deductions from pensions must be continued in the same amount as previously authorized. Therefore, a single deduction toward redeposit of benefits, authorized before retirement, does comply with all of these requirements. A more restrictive interpretation of the language of the sections would result in severe financial hardship not consistent with the obvious legislative intent behind California's pension laws. (See *McKeag* v. *Board of Pension Commrs.* (1942) 21 Cal.2d 386, 390 [132 P.2d 198]; *Gorman* v. *Cranston* (1966) 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133].)

Appellants argue that under ordinary circumstances, there is an actuarial probability that an employee will fully redeposit his contributions, plus interest, prior to retirement and that the plan suggested here was not within the contemplation of the Legislature because the actuarial probabilities do not favor full repayment. The problem we have with appellants' argument is that it requires that some line be drawn at a point where the actuarial probabilities favor the retirement system. Would an employee with five years' anticipated employment prior to retirement be

eligible to commence redeposit installments? If so, what of an employee with three years' employment remaining? Would we draw the line at one year or six months? The Legislature not having provided to the contrary, we must conclude that an employee may authorize payroll deductions for redeposit of contributions at any time prior to retirement.

Respondent, who was salaried at the time she received sick leave benefits, may authorize that the first installment be deducted from her sick leave salary warrant and that all future installments be deducted from any pension or disability benefits to which she is entitled after retirement.

The judgment of the trial court, ordering the board to give respondent an opportunity to prove that she was, at the time of the application, an employee of the Los Angeles Unified School District on payroll, is affirmed. We point out, for the guidance of the Board of Administration at that hearing, that the authorities cited herein supporting this court's conclusion that respondent was receiving a salary in the form of sick leave benefits in April 1977, would also appear to support the conclusion that she was an employee at the time of her application to redeposit contributions in February 1977.

The judgment is affirmed.

Files, Acting P. J., and Laidig, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.