[Civ. No. 51990. Second Dist., Div. Five. Sept. 26, 1978.]

DONALD N. GELMAN, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES' RETIREMENT ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Lemaire, Faunce & Katznelson and Steven R. Pingel for Plaintiff and Appellant.

John H. Larson, County Counsel, and Gregory Houle, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—Appellant Donald Gelman sought by writ of mandate to set aside a decision by the Los Angeles County Employees' Retirement Association, Board of Retirement, (Board) denying him a service-connected disability pension. Appellant's writ was denied, and this appeal followed.

Appellant's career as a social worker for the County of Los Angeles began in 1957. In 1966, appellant's assignment was changed from working with geriatric welfare recipients to "aid to the totally disabled" cases, which included those disabled because of psychosis. Following a strike by Los Angeles County social workers in the same year, appellant became depressed because he did not feel that the county welfare system was adequately caring for welfare recipients. This led to a belief that he was being restricted in his ability to deliver services to his clients, and that individual cases that he serviced suffered because of the limitations placed upon him.

In 1971, appellant became too ill to work. His symptoms of illness included insomnia, frequent nausea, vomiting, shaking, hypertension, difficulty in swallowing and breathing, and inability to concentrate and a loss of confidence. He applied for a service-connected disability retirement (SCDR) on June 12, 1972. On October 4, 1972, respondent Board found that appellant was disabled but that his disability was not service-connected, and granted him a nonservice disability retirement. On November 26, 1973, a hearing was held on the issue of the service-connectedness of appellant's disability before a hearing officer of Board. Medical reports of seven psychiatrists were admitted as evidence; five of them offered on behalf of appellant, and two by respondent Board. All of the psychiatrists whose reports were introduced on behalf of appellant found that his disability was service connected. Dr. Conrad, one of the board-appointed psychiatrists, took no position on the question of service-connection. The other board-appointed psychiatrist, Theodore Polos, M.D., concluded that the disability was not job-related. In his report, Dr. Polos stated with respect to the causation as follows: "Your second question I find is much more difficult to answer and in essence this patient has a chronic psychoneurosis with physical symptoms, etc. that existed as early as age 22 to 23 when he was medically discharged from the Army. The passage of time without psychiatric treatment demonstrated a gradual increase in the severity of his symptoms until he had the severe onset of symptoms in 1971. I do not believe that his total

illness is a result of injury on the job. However, it is my opinion that any stressful situation in other professions or occupations would have ultimately resulted in the same type of illness that we have seen in the last few years."

In denying appellant's petition for peremptory writ of mandate, the court made two findings of fact that are pertinent to this appeal. They are:

"9. Petitioner's employment with the County of Los Angeles aggravated Petitioner's pre-existing mental illness.

"10. Any employment in which Petitioner was likely to have been engaged would have aggravated Petitioner's pre-existing mental illness either to a greater extent than Petitioner's employment with the County of Los Angeles, or to the same extent as Petitioner's employment with the County of Los Angeles, but not to a lesser extent than Petitioner's employment with the County of Los Angeles."

The hearing officer for the Board had denied appellant's claim on the ground that he had not proved that there was substantial aggravation of his condition that was the proximate cause of his disability.[1] Finding 10 (*ante*) is in agreement with this conclusion but explains the reasons behind it.

 Appellant's argument on appeal is that the record conclusively establishes that his employment as a social worker aggravated his preexisting mental illness, therefore his disability must be held to have arisen out of and in the course of his employment as a matter of law. We agree.

It is clear that the trial court and the Board denied appellant his pension rights because of Dr. Polos' opinion that his emotional disability would have surfaced in any "stressful" employment, therefore the aggravation here was not substantially caused by his county employment.

---

[1] The verbatim conclusion was: "Based on all of the documentary and oral testimony before him (introduced and received at the November 26, 1973 Hearing), recognizing the basic conflict's among the expert Medical Reports, and after considering the excellent and professionally done SUMMARY OF APPELLANT'S MEDICAL REPORTS and Critique of the report of Dr. Theodore Polos, M.D. by Mr. Edward L. Faunce the undersigned Referee has concluded that the Applicant-Appellant has *not* borne the burden of showing that his County employment *either* caused directly or indirectly by substantial aggravation of a previously existing emotional condition his presently disabling emotional condition."

■ While this conclusion might seem, at first blush, to logically flow from the basic premise, it is not the law that the aggravation must be the sole or proximate cause of the disability. ■ The five psychiatric reports introduced on behalf of appellant stated that his mental illness was substantially aggravated by his social work. Dr. Polos agreed there was aggravation, but "waffled" in his conclusion, saying: "I do not believe that his *total* illness is a result of injury on the job. However, it is my opinion that *any stressful* situation in other professions or occupations would have ultimately resulted in the same type of illness that we have seen in the last few years." (Italics added.) Dr. Polos is not saying that appellant's disability is unrelated to his employment with the county. Instead, he is saying it is not the *sole* cause.

Under workers' compensation law, an employer takes his employee as he finds him and any acceleration or aggravation of a preexisting disability becomes a service-connected injury of that employment. (*Kuntz* v. *Kern County Employees' Retirement Assn.,* 64 Cal.App.3d 414, 421 [134 Cal.Rptr. 501]; *Buckley* v. *Roche,* 214 Cal. 241, 245-246 [4 P.2d 929].) Although we are dealing here with a government retirement pension and not a workers' compensation claim, it is now well established that the two systems are likeminded in their aim to benefit the employee. In *Heaton* v. *Marin County Employees Retirement Bd.,* 63 Cal.App.3d 421 [133 Cal.Rptr. 809], the court states at page 428: " 'In view of the similarity of the service-connectedness language in the statutes governing retirement boards (Gov. Code, § 31720, subd. (a)) and workmen's compensation appeals boards (Lab. Code, § 3600), and the fact that, although the two schemes are independent and serve different functions, their purposes are "in harmony rather than in conflict" (*Pathe* v. *City of Bakersfield,* 255 Cal.App.2d 409, 416 [63 Cal.Rptr. 220]), application of such a nonstatutory rule by analogy might be appropriate.' Thus it seems clear that the tendency is to view the two bodies of law as compatible rather than the opposite."

The trial court was correct in stating that appellant's county employment aggravated his preexisting mental illness (finding No. 9). The record requires such a finding; however, under prevailing law, this determined appellant's right to his pension. In *Heaton, supra,* pages 428-429, the court notes: "[T]here are two provisions in [Gov. Code] section 31720 which demonstrate that the disability does not have to be entirely service-connected. The section states that a member 'permanently incapacitated . . . shall be retired for disability . . . if, and only if: [¶] (a) His incapacity is *a* result of injury or disease arising out of and in the course of his

employment,' not *the* result thereof. (Italics added.) Had the Legislature determined that the incapacity had to be completely service-connected the Legislature would·have stated that his incapacity must be *the* result of his employment. Also, under subdivision (b) a member who is permanently incapacitated for the performance of duty who has completed five years of service shall be retired regardless of whether the incapacity is a result of injury or disease arising out of and in the course of his employment. . . . [¶]'. . . In *Jorgensen* v. *Cranston,* 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297], the rule is stated thus: " '[P]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly.' " ' "

Under the workers' compensation system the fact that any other stressful employment would have caused the same disability is irrelevant. The same is true here. The inquiry is solely whether the employment is in fact *a* cause. " '[T]he identified "cause" [of the disability] cannot be made to yield to purely hypothetical ones.' " (*Franklin* v. *Workers' Comp. Appeals Bd.,* 79 Cal.App.3d 224, 243 [145 Cal.Rptr. 22].)

The Board's argument, concurred in by the trial court, is that appellant can recover only if it is demonstrated that the stress placed upon him as a social worker was *greater* than the stress would be from some other "stressful" occupation and it was this added pressure that aggravated his preexisting condition. We are not referred to any law by the Board in support of this argument. ■ Instead the law, both statutory and decisional, is clear that all that is. required is a material and traceable connection to appellant's mental deterioration that was caused by the stress of his county job. ■ All of the psychiatric reports here have established the required connection.

It is true that there is an important distinction between workers' compensation cases and retirement pension cases because of the "all or nothing" approach applicable to pension plans. This was also considered in *Heaton, supra,* pages 430-431, and disposed of as follows: "Appellant's final argument is basically that.this court should rewrite Government Code section 31720 to require that the employment must be the *sole* cause where the permanent incapacity is due to mental, rather than physical disability. This, appellant contends, is because it is completely beyond the

art of the psychiatrist to de-limit causation of psychiatric disorders. Thus, in every case (such as here) where the symptomatology is somewhat subjective, the expert would as a matter of course conclude that a contributing cause was a preexisting condition, family life, or employment conditions. Appellant argues this works an unfair result under retirement law, since even an infinitesimal contribution to the disability might require full compensation, whereas under workers' compensation law, an employer bears only his share of what he has been found to have caused. [¶] It appears that appellant's remedy, here too, is with the Legislature . . . ." The same reasoning is viable here.

The judgment denying the writ of mandate is reversed.

Stephens, Acting P. J., and Ashby, J., concurred.