[Civ. No. 53715. First Dist., Div. Three. May 17, 1983.]

STANCEL L. LUNDAK, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE SAN MATEO COUNTY
EMPLOYEES' RETIREMENT SYSTEM, Defendant and Respondent.

COUNSEL

Norback & DuRard, Norback, DuRard, Calton, Gangemi & Schuler and Ernest H. Norback for Plaintiff and Appellant.

Keith C. Sorenson and James P. Fox, District Attorneys, and Thomas Daniel Daly, Deputy District Attorney, for Defendant and Respondent.

OPINION

WHITE, P. J.—Appellant became unable to perform his duties as a mail clerk driver for the County of San Mateo in October 1979. He had applied for service-connected disability retirement benefits in January 1979. After a hearing on his application, the respondent board of retirement issued findings of fact, denied appellant's application, and granted him nonservice-connected disability retirement. Appellant filed a petition for writ of mandate in superior court. The court denied the petition. Appellant contends on appeal that there was no substantial evidence to support the superior court's decision. We agree and reverse the judgment below.

Before appellant began work for the County of San Mateo on December 11, 1972, he had had no complaint of pain in his left knee, although X-rays taken in February 1972 revealed osteoarthritis in both knees. On September 11, 1973, appellant twisted his left knee getting out of his delivery truck. Four years later, appellant again twisted his left knee in the same manner. Pain in his left knee finally forced him to retire in October 1979.

Appellant's application for service-connected disability retirement benefits is governed by Government Code section 31720. The provision, as amended, requires an applicant to have been incapacitated as a result of injury or disease arising out of and in the course of employment. Such employment must have contributed substantially to the applicant's incapacity.[1]

---

[1]Government Code section 31720 reads, in pertinent part: "Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if:

"(a) The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity.

. . . .

" . . . . . . . . . . . . . . . . . . .

"The amendments to this section enacted during the 1979-80 Regular Session of the Legislature shall be applicable to all applicants for disability retirement on or after the effective date of such amendments."

Underlining indicates change or additions made by the 1980 amendment.

The effective date of the amendment is January 1, 1981. Although appellant filed his application before this date, he has not been granted service-connected disability retirement. Appellant

" '[P]ension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly.' " (*Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 296 [27 Cal.Rptr. 297].) This principle has been recognized as well settled in California (*Gorman* v. *Cranston* (1966) 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133]) and has been cited in numerous cases involving the award of county employee retirement benefits. (*Heaton* v. *Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 429 [133 Cal.Rptr. 809]; *Gelman* v. *Board of Retirement* (1978) 85 Cal.App.3d 92, 97 [149 Cal.Rptr. 225]; *DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 398 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150].)

■ Both statutory and decisional law make clear that employment need not be the sole cause of an employee's disability in order for an award of employment-connected disability retirement to be made. (Gov. Code, § 31720; *Heaton* v. *Marin County Employees Retirement Bd.*, *supra*, 63 Cal.App.3d at pp. 428-429.) ■ It has been held, based on reasoning parallel to that behind the principle in workers' compensation law, that an employer takes his employee as he finds him, and therefore any acceleration or aggravation of a preexisting disability becomes a service-connected injury of that employment (see *Kuntz* v. *Kern County Employees' Retirement Assn.* (1976) 64 Cal.App.3d 414, 421 [134 Cal.Rptr. 501]; *Buckley* v. *Roche* (1931) 214 Cal. 241, 245-246 [4 P.2d 929]), and that an applicant for a government retirement pension will be awarded service-connected benefits where he or she can show a material and traceable connection between disability and employment. (*Gelman* v. *Board of Retirement*, *supra*, 85 Cal.App.3d 92.)

In *Gelman*, the judgment of the trial court denying the applicant's petition for writ of mandate was reversed. The Court of Appeal held that because the record conclusively established that the applicant's employment as a social worker aggravated his preexisting mental illness, his disability arose out of and in the course of his employment as a matter of law. (*Id.*, at p. 95.) ■ Because we find that the record in the present case clearly shows that appellant's two work-related injuries as well as the day-to-day stresses of his job made his employment a substantial cause of his disability, we hold that his disability arose out of and in the course of his employment as a matter of law. The trial court's denial of his writ petition must be reversed.

---

continues to seek benefits under Government Code section 31720 and is therefore still an "applicant for disability retirement." Consequently, the amended statute applies to him by virtue of the specific applicability provisions added by the 1980 amendment.

Each of the doctors who examined appellant believed that appellant's two work-related accidents were responsible to some extent for his disability. Dr. Smiley, appellant's treating physician from November 1975 through 1979, attributed 10 percent of appellant's knee disability to the accidents. Dr. Trauner, who examined appellant in 1980, thought it "reasonable that 10% of his disability in his lower extremities [was] related to his working activities over the years and to the injuries reported." Dr. Katz, who also examined appellant in connection with his retirement application, attributed one-third of the disability to appellant's preexisting conditions of disease and obesity and two-thirds to his work-related injuries. The daily stresses of his job also contributed to appellant's disability, in Dr. Katz' opinion. Dr. Katz explained at his deposition that he thought the injuries accelerated or worsened appellant's arthritis and that the impact of such injuries might not be evident in X-rays for several years.

Dr. Trauner also expressed in his report the opinion that appellant "would be limited to sedentary activities because of his longstanding hip disability which is not in any way related to his industrial injuries as reported." Dr. Trauner speculated that appellant's hip problem was probably related to a condition existing since appellant's childhood.

While appellant may eventually have been forced to retire because of hip problems, he consistently asserted, to his work supervisor and to doctors, that the reason he stopped working in October 1979 was that he could no longer tolerate the pain in his left knee.[2] Dr.Trauner, who examined appellant in June 1980, eight months after appellant had ceased working for the county, was of the opinion that at that time arthritis in both appellant's knees and hip was responsible for his disability and that 10 percent of the overall disability in appellant's lower extremities as of June 1980 could reasonably be attributed to appellant's working activities and to his two injuries. Dr. Smiley's reports did not consider arthritis in appellant's hip as a factor contributing to his overall disability. Dr. Katz attributed 10 percent of appellant's disability to his hip condition and 80 to 90 percent to his knee problems. We conclude, therefore, that while arthritis in appellant's hip may have been a factor contributing to appellant's disability, it alone would not have forced him to stop work in October 1979.

Prior to the 1980 amendment of Government Code section 31720, it had been held that employment had to have more than an "infinitesimal and inconse-

---

[2]We note indications in the record that appellant was aware of some problems with his hip and ankles. His wife wrote a note to Dr. Smiley on March 6, 1978, stating: "He now has pain in his ankles and hips . . . ," and Dr. Smiley himself noted a slight limitation in the range of motion of appellant's hips, knees and ankles on November 6, 1978. The record, taken as a whole, however, clearly establishes that appellant's principal subjective reason for leaving his job in October 1979 was pain in his left knee.

quential" relationship to the applicant's incapacity, although it could comprise "a very small part of the disability." (*DePuy* v. *Board of Retirement, supra,* 87 Cal.App.3d at p. 398.) The *DePuy* court defined infinitesimal as "capable of being made arbitrarily close to zero, immeasurably or incalculably small," and inconsequential as "not regularly flowing from the premises, irrelevant, inconsequent (lacking worth, significance or importance)." (*Ibid.*) The court stated that while it was not the intent of the Legislature that the board make awards where such a slight causal connection was demonstrated, the contribution of the applicant's employment to his disability need only be "real and measurable" in order to support an award. (*Id.,* at p. 399.) The medical testimony regarding the contribution of appellant's two work-related accidents to his disability clearly established that it was more than "inconsequential," placing it somewhere between 10 and 60 percent.[3] We think the record shows the contribution of appellant's employment to his disability meets the "small part" and "real and measurable" tests of *DePuy*.

Government Code section 31720 was amended in response to *Heaton* v. *Marin County Employees Retirement Bd., supra,* 63 Cal.App.3d 421, which held that an applicant is entitled to a service-connected disability if he or she is permanently unable to perform his or her job, and *any* part of the disability is job-connected. Following this decision, many counties urged change in existing law, fearing that the cost of county disability programs would grow to prohibitive levels. The final form of the amendment reflected a compromise between the bill's supporters and labor representatives who strenuously opposed the bill. (Assem. File Analysis, Sen. Bill No. 1076, June 5, 1980.)

The Legislature did not promulgate any quantitative guidelines as to what it meant by "substantially" in its 1980 amendment of Government Code section 31720, and nothing in the history of the bill provides us with any indication of the intended meaning of this word. We turn, therefore, to the Restatement Second of Torts for assistance in defining "substantially."

One of the requirements for "legal cause" set forth in section 431 of the Restatement Second of Torts is that negligent conduct be a "substantial factor" in bringing about harm. Comment a to section 431 distinguishes substantial cause from cause in a philosophical sense in the context of negligent conduct: "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the

---

[3]Dr. Katz attributed two-thirds of appellant's knee disability to his work-related injuries, but then broke down appellant's overall disability, attributing 10 percent to his hip condition and 80 to 90 percent to his knee problems. Hence, the maximum estimate of the contribution made by the work-related injuries to appellant's overall disability is two-thirds of 90 percent, or 60 percent.

idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.''

Using this definition of substantial in applying Government Code section 31720, as amended, does not abrogate the Legislature's intent to restrict the *Heaton* court's liberality in awarding service-connected disability benefits; a substantial contribution, thus defined, would not include *any* contribution of employment to disability, no matter how small and remote. At the same time, the use of this definition permits adherence to the well-settled principle, cited above, that pension legislation must be applied fairly and broadly.

We conclude that the medical opinions of Dr. Smiley, Dr. Trauner and especially Dr. Katz establish that appellant's two work-related injuries and the stresses involved in performing his job are not "so insignificant that no ordinary mind would think of them as causes" of his disability. We think reasonable people would regard appellant's employment as a cause of his disability, on this basis of the record in this case. We hold, therefore, that appellant's employment contributed substantially to his disability and that the terms set forth in subdivision (a) of Government Code section 31720, as amended, are satisfied.

Judgment is reversed. The cause is remanded with directions to enter judgment for appellant in accordance with the views herein expressed.

Feinberg, J., concurred.

**SCOTT, J.**—I dissent.

The majority concludes from the record in this case that appellant's employment contributed substantially to his disability and that therefore the trial court erred in denying appellant's petition for a writ of mandate. I believe the judgment of the court below should be affirmed.

After a hearing on appellant's application for service-connected disability retirement benefits, the respondent board of retirement made findings of fact and denied the application. In reviewing the evidence in the record of this proceeding and deciding not to grant appellant's petition for writ of mandate, the trial court exercised its independent judgment. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].) Our function is simply to determine if substantial evidence supports the

trial court's findings. It is patently clear that substantial evidence does in fact support the trial court's decision. My colleagues, however, insist on retrying the case de novo.

Evidence supporting the denial of service-related disability retirement benefits is found first in the report of Dr. Smiley, appellant's treating physician from late 1975 until after appellant's retirement. This report, dated March 15, 1979, establishes that appellant suffered from obesity, hypertension, severe arthritis and knee problems before he began work for the county; that following treatment immediately after the first employment-related accident, appellant was not seen by Dr. Smiley at all for more than two years; that appellant complained of pain in both knees in November 1975, November 1978, and March 1979; and that appellant's continuing obesity was a complicating factor. Dr. Smiley's opinion, as expressed at the end of his report, was that appellant's obesity and his preexisting conditions contributed 90 percent of his disability.

In March 1979, when Dr. Smiley wrote his report, appellant's hip condition had not yet been discovered, although a note written by appellant's wife to Dr. Smiley on March 6, 1978, describing appellant's symptoms, states that appellant had pain in his ankles and hips at that time. In addition, Dr. Smiley noted, after examining appellant on November 6, 1978, the slightly limited range of motion of appellant's hips, knees and ankles.

X-rays taken in January 1980 in connection with appellant's retirement application revealed degenerative arthritis in appellant's left hip. Dr. Trauner, who examined appellant in 1980, but who had not treated him previously, thought that the degenerative changes in appellant's left hip, which he believed had been present for a long time, were probably related to a condition originating during appellant's childhood. Dr. Trauner agreed with Dr. Smiley's assessment that 90 percent of appellant's knee disability was related to the natural progression of appellant's underlying arthritic condition. Unlike Dr. Smiley, however, Dr. Trauner was aware of the extent of appellant's hip problems. Although Dr. Trauner thought appellant's overall disability was due to severe degenerative arthritis in both knees and left hip, he thought the hip disability alone would limit appellant to sedentary activities.

Dr. Trauner's report provides substantial evidence for the following findings of fact made by the trial court: "5. Lundak has severe degenerative arthritis in both knees and in the left hip. These problems have resulted in Lundak's present disability.

"6. Lundak would be limited to sedentary activities because of his hip disability alone which is not in any way related to the two industrial injuries to his left knee.

"7. Substantially all of Lundak's knee disability would have been present in the absence of any work related injuries as a result of the natural progression of the underlying arthritic condition in both of his knees. This underlying arthritic condition was not related to nor caused by Lundak's employment.

"8. Lundak's obesity is a major factor in his present disability and is not job-related.

"9. The evidence establishes that, even if the two work-related injuries described above had not occurred, substantially all of Lundak's present disability would have been present because of his obesity and the arthritic condition in his hip, both of which are nonindustrial, and because of the natural progression of the underlying arthritic condition in both knees, substantially all of which would have been present even without the two injuries."

There is no conflict between findings 5 and 6, as appellant urges. It is completely possible for a person to have several problems, more than one of which may be disabling. Although appellant's knee problems may be incapacitating, Dr. Trauner's report supports the conclusion that the hip condition alone would prevent appellant from carrying out his duties as a mail clerk driver. The hip disability completely overshadows the disabling effect of appellant's knee condition.

Government Code section 31720, as amended, governs the disposition of this case. It requires that an applicant's employment contribute substantially to his or her disability in order for an award of service-connected disability to be made. I think the record in this case supports the conclusion that appellant's work activities and two service-related accidents did not contribute substantially to his disability.

"[C]ourts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them." (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The synonyms given for "substantial" in the principal entry in Webster's Third New International Dictionary are: "material; real, true; important, essential."

Because appellant's hip condition alone would completely disable him and because this problem is not related in any way to his employment, his employ-

ment cannot be viewed as having made a material, real, true, important or essential contribution to his disability. The judgment of the trial court should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied August 11, 1983. Richardson, J., was of the opinion that the petition should be granted.