[No. B014820. Second Dist., Div. Seven. July 29, 1986.]

ALVIN McCOY, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION, Defendant and Appellant.

**COUNSEL**

De Witt W. Clinton, County Counsel, Milton J. Litvin, Assistant County Counsel, and Daniel E. McCoy, Deputy County Counsel, for Defendant and Appellant.

Lewis, Marenstein & Kadar and Thomas J. Wicke for Plaintiff and Respondent.

Lemaire & Faunce and Edward L. Faunce as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—This is an appeal from the issuance of a writ of mandate compelling the Board of Retirement of the Los Angeles County Employees Retirement Association (Board, or Retirement Board) to issue a service-connected disability retirement allowance to Alvin McCoy. The Board, which had granted McCoy a nonservice-connected disability retirement, denied the disability was service-connected. The trial court found that McCoy established by a preponderance of the evidence that his hypertension was service-connected because it arose out of and in the course of his employment, as required by Government Code section 31720.[1] ██ ██ ██ ██ The Board contends that the trial court committed reversible error in admitting two stipulations between McCoy and his employer, the County of Los Angeles (County), from McCoy's Workers' Compensation Appeals Board (WCAB) action, to the effect that 75 percent of the aggravation to McCoy's hypertension was caused by industrial stress.[2]

We conclude that the admission of the stipulations was not error and, even if error, was not prejudicial because the stipulations were not necessary to the judgment which was amply supported by other evidence. (See *Rue-Ell Enterprises, Inc.* v. *City of Berkeley* (1983) 147 Cal.App.3d 81, 91 [194 Cal.Rptr. 919].) We shall affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

McCoy began working for the County in 1957 as a hospital clerk. He served in the military between 1958 and 1962, and then returned to his position at the hospital. In 1965 or 1966, he was promoted to the position

---

[1]Unless otherwise stated, all statutory references are to the Government Code.

[2]As the trial court properly held, the stipulations and order in the WCAB action have no collateral estoppel or res judicata effect herein because the requisite privity between the County, against which the workers' compensation award was made, and the Retirement Board, is lacking. (*Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 798-799 [195 Cal.Rptr. 681, 670 P.2d 335].)

of tram operator. In 1969, he was transferred to the X-ray department, as an intermediate typist-clerk, where he first encountered job stress when he was "chewed out" about three times a week when X-ray records could not be located.

After becoming a warrant investigator in August 1972, McCoy encountered job stress on a daily basis when irate welfare recipients, who claimed their checks were lost or stolen, physically threatened him for refusing to issue duplicate checks. He also received verbal abuse from merchants, angered when informed that checks were stolen. Whenever he encountered such abuse, he would suppress his own feelings.

In March 1976, McCoy's supervisor was replaced by Wright, and McCoy joined in a group grievance against Wright's new work procedures. Thereafter, Wright began intimidating McCoy by checking his work very closely for errors and by once calling McCoy's wife after McCoy had called in to say he would be late due to car trouble. Wright suspended McCoy for three days, which was later reduced to three hours, when McCoy, citing County policy, refused to go into the field during stormy weather. After receiving the suspension, McCoy became "really upset," could not control his emotions, and was crying. He went to the occupational health and affirmative action offices where he was advised to file a grievance on the ground of race discrimination.

McCoy experienced stress from his dealings with Wright. When Wright gave McCoy a work performance evaluation of "Improvement Needed," McCoy protested and obtained a "Competent" rating. When McCoy discovered a welfare recipient who was receiving aid under two different names, Wright refused to give McCoy the recommended letter of commendation. On another occasion, when McCoy discovered a recipient using two different names, the department personnel chief ordered Wright to give McCoy the letter of commendation. When McCoy was to receive his 20-year service pin, Wright walked up to him with it and just threw it to him.

McCoy was diagnosed as having hypertension in 1977, for which he takes medication. In 1978 or 1979, he began experiencing headaches, dizziness, chest pains and sleeplessness. Prior to 1977, McCoy, who is 5 feet 74 inches tall, weighed about 180 pounds; in 1978 he weighed 227 pounds.

McCoy filed an application for adjudication of claim with the WCAB in 1978, alleging that he sustained an injury from the stress of employment. On April 22, 1980, McCoy and the County entered into stipulations that he did sustain an injury to his psyche and vascular system in the form of

aggravated hypertension, 75 percent of which was due to industrial stress.[3] The parties also stipulated that he avoid heavy physical work and emotional stress. On June 11, 1980, the workers' compensation judge issued an award pursuant to the stipulations.

Thereafter, the County's department of personnel rehabilitation section determined that McCoy's job as a warrant investigator was incompatible with the restriction from emotional stress. McCoy was given the choices of taking a less stressful job, applying for service-connected disability retirement, or waiving any benefits he might be entitled to because of his condition but remain on the job. McCoy asked for other suitable work within the County, but none was found. McCoy was eventually provided with rehabilitation training as a polygraph operator.

McCoy quit the County in October 1980, and filed an application for a service-connected disability retirement pension before the Board, alleging that he was disabled due to hypertension and a psychiatric illness which were caused by his employment. The Board denied a service-connected disability retirement pension, but granted a nonservice-connected disability retirement pension.

At the administrative hearing on McCoy's appeal, the referee considered conflicting written medical reports, but excluded the WCAB action stipulations.[4] McCoy presented psychiatric reports by Doctors Bloch and Singer, who concluded that his psychiatric disability was "slight to moderate" and "absent to minimal," respectively. The Board presented psychiatric reports by Dr. Boags, who concluded that McCoy was "experiencing great stress reportedly stemming from a hostile work environment, and an inability to cope successfully with the perceived harassment"; and by Dr. Gwartz, who concluded that McCoy's objective factors of disability were minimal with no evidence that work stress caused a specific psychiatric impairment. The referee concluded that there was no preponderance of the evidence showing

---

[3]One of the stipulations stated that McCoy "sustained injury arising out of and in the course of employment to his psyche and vascular system in the form of hypertension aggravation," causing a permanent disability of 47.5 percent, "based on a restriction from heavy work and emotional stress as a result of an aggravation of hypertension, 75% due to industrial factors, and a psychiatric condition causing disability between very slight and slight."

The second stipulation stated that McCoy sustained the same injury as above, causing a permanent disability of 30.5 percent, based on "hypertension, aggravated by industrial stress, which has resulted in a preclusion from heavy work and emotional stress, 75% caused by this injury." It was further stipulated that McCoy "sustained an injury to the psyche, but there is no disability attributed to the injury to the psyche over and above the disability caused by the hypertension."

[4]McCoy offered the stipulations in evidence, but the Board objected on the grounds that they were irrelevant and inadmissible under *Traub* v. *Board of Retirement, supra,* 34 Cal.3d at pages 798-799. The referee excluded the stipulations.

a psychiatric disability: "Even Dr. Bloch doesn't say so. Dr. Singer finds the disability to be absent to minimal. Dr. Boags doesn't persuade us to find disability. Dr. Gwartz clearly says no disability."

McCoy presented three medical reports concerning his hypertension disability. Dr. Dahlgren found that employment aggravated McCoy's hypertension, without explaining the extent of aggravation, and concluded that the aggravation was 100 percent job related. Dr. Markovitz also found that employment aggravated the hypertension, and concluded that 25 percent of his disability was a result of job stress. Dr. Washington attributed the hypertension to anxiety stemming from job stress and obesity, but concluded that there was no obvious external cause of the hypertension.

The Board presented two medical reports concerning McCoy's hypertension disability. Dr. Gwartz concluded that the hypertension was not due to employment stress but was solely caused by obesity and an inherited predisposition to developing the disease. Dr. Holloman concluded that 50 percent of the hypertension was caused by employment-related stresses.

The referee concluded that the medical reports, particularly Dr. Markovitz's and Dr. Washington's, were "persuasive enough to uphold the Board's initial finding" of disability due to hypertension. However, the referee found that this disability did not arise out of and in the course and scope of employment, and denied a service-connected disability pension: "When we look to the causation issue as it relates to the disability caused by hypertension, we note that: Dr. Markovitz attributed only twenty-five percent to work stress. Doctor Gwartz found none of the disability was so attributable; Dr. Holloman's view was that fifty percent was the result of work; Dr. Washington offers no view on causation and Dr. Dahlgren found it was entirely caused by work. ■ ■ ■ ■ If we average these views out we must conclude that Mr. McCoy has not proved, by a preponderance of the evidence, that his hypertensive disability was substantially caused by work stress."[5]

---

[5]We are troubled by the referee's use of the phrase, "[i]f we average these views out we *must conclude,*" in that it indicates a belief that the function of the referee is simply to add up the percentages attributed by the various medical reports to job-related disability, and average them to make a final determination of whether the injury is job related. (Italics added.) The result obtained by such a method is somewhat reminiscent of a jury's quotient verdict whereby the result is arrived at wholly by chance, in that the party who presents the greater number of witnesses could very well win on that basis alone.

As in ordinary civil actions, the party asserting the affirmative at an administrative hearing has the burden of proof, including both the initial burden of going forward and the burden of persuasion by a preponderance of the evidence. (See *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 177 [223 P.2d 1]; Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 5.23, p. 49.) The term preponderance of the evidence "does not

The referee's findings were adopted by the Board on September 22, 1983.

■ At the hearing on McCoy's petition for writ of mandate, the trial court properly undertook to base its findings on its independent judgment of the weight of the evidence in the administrative record. (*Traub* v. *Board of Retirement, supra,* 34 Cal.3d at p. 797; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29].) The trial court found that the referee had erroneously excluded the stipulations and admitted them in evidence, over the Board's objection, on the ground of relevance. (Code Civ. Proc., § 1094.5, subd. (e).)[6]

The court found that the weight of the evidence supported the conclusion that the hypertension was service-connected. Judgment was entered and the writ was issued. This appeal followed.

## II

### ISSUE

In the administrative mandamus proceeding below, the Board objected to McCoy's offer to introduce the WCAB-action stipulations into evidence, on the ground that the County's evaluation of a workers' compensation claim is irrelevant to the Retirement Board's determination of whether McCoy's "incapacity is a result of injury or disease arising out of and in the course of [his] employment, and such employment contributes substantially to such incapacity. . . ." (§ 31720, subd. (a).) The transcript reveals that the trial court admitted the stipulations for the purpose of explaining or interpreting the various medical reports that were introduced in both the WCAB action and the Retirement Board action.

The Board argues on appeal that the positions taken by the Retirement Board and the employer are sometimes adverse (see *Leili* v. *County of Los*

necessarily mean a preponderance of the number of witnesses." (*Grant* v. *McPherson* (1894) 104 Cal. 165, 167 [37 P. 864].) There are "various elements which go to determining the weight to be given statements of parties on one side or on the other of a controversy—their opportunities for observation, mental capacity, standing, credibility, and numbers. . . ." (*Hanton* v. *Pacific Electric Ry. Co.* (1918) 178 Cal. 616, 621 [174 P. 61].) Although it is proper "to instruct a jury that they may take into consideration the numerical element with the other elements in determining the weight of testimony on one side or another of a controversy" (*ibid.*), that is not the sole criteria.

[6]Code of Civil Procedure section 1094.5, subdivision (e), provides: "Where the court finds that there is relevant evidence which . . . was improperly excluded at the hearing before respondent, . . . in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

*Angeles* (1983) 148 Cal.App.3d 985 [196 Cal.Rptr. 427]), and that where the Board disagrees with the WCAB's determination that the employee is disabled, the employee is to be retroactively reinstated (*id.*, at p. 998; § 31725). The Board contends that because it has no control over or right to consult in the County's decisions on workers' compensation matters and investigations, it is irrelevant that the County stipulated that the aggravation to McCoy's hypertension was 75 percent job related. (See *Traub* v. *Board of Retirement, supra,* 34 Cal.3d at pp. 798-799.)

III

STANDARD AND SCOPE OF REVIEW

■ "[T]he strict rules of evidence which obtain in the courts are not enforced in administrative proceedings [citations]. . . ." (*Jenner* v. *City Council* (1958) 164 Cal.App.2d 490, 496 [331 P.2d 176].) Rule 10(c) of the Board's Procedures for Disability Retirement Hearings provides: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection and [*sic*] civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection and [*sic*] civil actions. The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing, and irrelevant and unduly repetitious evidence shall be excluded."

■ Rule 10(c), is essentially identical to the Administrative Procedure Act's provision concerning admissibility of evidence (§ 11513, subd. (c)). When statutes or regulations of a particular agency are essentially identical to Administrative Procedure Act provisions, the courts will interpret them in the same way. (See *Sinclair* v. *Baker* (1963) 219 Cal.App.2d 817, 823 [33 Cal.Rptr. 522].) Section 11513, subdivision (c), provides in pertinent part that "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." Thus even "hearsay evidence is *admissible* in an administrative hearing if (1) it is relevant, and (2) it is of the character or quality on which 'responsible persons are accustomed to rely in the conduct of

serious affairs.'" (*Mast* v. *State Board of Optometry* (1956) 139 Cal.App.2d 78, 85 [293 P.2d 148].)

 As a general rule, evidence is relevant if it has any tendency in reason to prove or disprove a disputed fact that is of consequence to the determination of the action. (Evid. Code, § 210.) The trial court is vested with wide discretion in deciding relevancy, and its determination will not be disturbed on appeal unless there is a clear showing of abuse. (*San Diego Gas & Electric Co.* v. *Davey Tree Surgery Co.* (1970) 11 Cal.App.3d 1096, 1103 [96 Cal.Rptr. 889]; *Carpenson* v. *Najarian* (1967) 254 Cal.App.2d 856, 869 [62 Cal.Rptr. 687].)

 An administrative agency is not required to observe the strict rules of evidence enforced in the courts, and the admission or rejection of evidence is not ground for reversal unless there has been a denial of justice. (*Kunimori Ohara* v. *Berkshire* (9th Cir. 1935) 76 F.2d 204, 207.) "A verdict or finding cannot be set aside on the basis of erroneous admission of evidence if the error did not result in a miscarriage of justice. (Evid. Code, § 353; see Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Such error is not prejudicial if the evidence 'was merely cumulative or corroborative of other evidence properly in the record,' or if the evidence 'was not necessary, the judgment being supported by other evidence.' (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 303, at p. 4286.)" (*Rue-Ell Enterprises, Inc.* v. *City of Berkeley, supra,* 147 Cal.App.3d at p. 91.)

"The trial court must exercise its independent judgment upon the weight of the evidence produced or which could not, in the exercise of reasonable diligence, have been produced before the administrative agency and any evidence which might have been improperly excluded by the administrative agency. [Citations.] After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) "'. . . "In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury."'" (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; italics in original.)

IV

DISCUSSION

The trial court judge, after explaining that the stipulations carried no collateral estoppel effect against the Board on the issue of industrial causation, concluded that the County's stipulations nevertheless constituted relevant admissible evidence: "And you're saying to me the Retirement Commission, because it's administering employee funds, should not be stuck with the County's stipulation. I agree with you, and I said that I was not receiving them in evidence for that purpose. But when you say to me, 'since one of our doctors said it was zero disability, throw out all of the other doctors,' I'm saying to you, I am entitled to consider not only the evidence that was before the hearing officer, to wit, the other doctors who said 30 percent, 40 percent, a hundred percent, but I'm also entitled to consider the fact that the County stipulated as it did.

"I don't understand all of the numbers in these WCAB stipulations, but I don't have to understand them, they are numbers in double figures, which range from 30 on upward. And I'm saying if the employer agreed to industrial causation on those percentage bases, then I'm entitled to consider that in evaluating the various doctors' opinions—and that's the only reason I'm taking them into account—am I bound by them? Of course not. Is it collateral estoppel? Of course not. But to the extent that this is an independent judgment circumstance, I am entitled to look for as much information as I can get reasonably and truthfully within the framework of what is before me in an effort to reach my determination. That's my responsibility."

■ We conclude that the County's stipulations as to industrial causation constituted relevant evidence of the sort on which responsible persons are accustomed to rely in the conduct of serious affairs. (Rule 10(c); § 11513, subd. (c).) The stipulations were properly subject to the trial court's independent review of the evidence. While the stipulations were not binding against the Board herein (*Traub* v. *Board of Retirement, supra,* 34 Cal.3d at pp. 798-799), and while they may not be entitled to great weight given that the County's reasons for conceding industrial causation remain a mystery, they nevertheless possess a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210; see rule 10(c); § 11513, subd. (c).)

The Board contends that notwithstanding the trial judge's above-quoted statements, the judge's later statements prove that the stipulations were nevertheless improperly given collateral estoppel effect. We disagree. The

judge's later comments,[7] taken in context, merely show that he was engaging in a weighing process as part of his independent review of all the evidence in the record.

 In addition, we note that neither party requested that the trial court enter a statement of decision within the time limits prescribed by Code of Civil Procedure section 632. (See *Hadley* v. *Superior Court* (1972) 29 Cal.App.3d 389, 394-395 [105 Cal.Rptr. 500].) Had a statement of decision been requested and entered, possibly the record would have been clearer as to whether the trial court judge did or did not give undue weight to the stipulations. Having waived this right, however, the Board cannot complain on appeal because the record is not clearer. We are bound by the rule on appeal that "'"[w]hen two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."'" (*Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d at p. 308.)

 Finally, we conclude that even assuming, arguendo, the trial court abused its discretion in determining that the stipulations were relevant to aid its interpretation of the various medical reports, there was no miscarriage of justice warranting reversal. "[I]t is presumed on appeal that the court,

---

[7]These comments were as follows: "I'm not faulting you [referring to Deputy County Counsel] for signing the stipulations, and I understand that you were the attorney who did sign them. I can read. I'm not faulting you for joining in the stipulation, and I'm not saying I'm buying the 75 percent figure.

"All I'm saying to you is that the County can just as easily say it is not opposed to an order being entered to the following effect, without stipulating to it, and I'm not saying that would make any difference here.

"All I'm saying to you is that when I have the doctors' reports of this range, from zero to a hundred percent, and you say to me to follow the zero and ignore the hundred percent, when it's clear that the hearing officer took into account all of them in some kind of averaging approach, I'm saying it's not unreasonable for me to say that zero is off the mark, 100 is probably off the mark, too. I bet that 100 is off the mark. If I had to quantify it at 20 or 30 or 50 or 60 or 70, I'd have a very difficult time doing it, because I regard myself as being more careful in my use of language and more honest in my reasoning.

"And this man because of his family history and his size had hypertension going in; he had the genes for it. By the same token, he had a supervisor he hated and who obviously didn't care for him particularly, either.

"And the County, for reasons I will never understand, has agreed he's permanently disabled.

"Now, maybe the theory is they don't want to transfer malcontents elsewhere, and they would rather just throw them out of the system altogether, but the County has agreed that his hypertension makes him permanently disabled.

"Now, that's what I have to work off, and that's what's killing you here, that's why you're losing this one. Because the County agreed he was permanently disabled, and the only fact of injury I'm aware of—he didn't have to lift heavy weights in dealing with lost warrants. The only injury I'm dealing with here is with regard to the blood pressure, and that's why I have to come to the conclusion that I did. So as a matter of independent judgment I'm saying that the weight of the evidence does not support the findings of referee Black, . . ."

sitting without a jury, did not base its finding on irrelevant evidence where there is competent evidence to support it. [Citations.]'' (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd., supra,* 36 Cal.2d at p. 176.) Our review of the record reveals that the disputed evidence was not necessary to the judgment, which was amply supported by other substantial evidence establishing that McCoy's employment ''contribute[d] substantially'' (§ 31720) to his disability.

Section 31720 reads, in pertinent part: ''Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if:

''(a) The member's[8] incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity. . . .

'' . . . . . . . . . . . . . . . . . . . . . . .

''The amendments to this section enacted during the 1979-80 Regular Session of the Legislature shall be applicable to all applicants for disability retirement on or after the effective date of such amendments.''

The effective date of the amendment is January 1, 1981. McCoy filed his application after this date, but was employed well before this date. The parties and the court below assumed that the amended statute applies herein.[9]

Assuming that the amended statute applies, we consider its effect herein. As noted by the court in *Lundak* v. *Board of Retirement* (1983) 142 Cal.App.3d 1040, 1045: ''The Legislature did not promulgate any quantitative guidelines as to what it meant by 'substantially' in its 1980 amendment of Government Code section 31720, and nothing in the history of the bill provides us with any indication of the intended meaning of this word.'' According to its legislative history, the section was amended in ''response to *Heaton* v. *Marin County Employees Retirement Bd.* [1976] 63 Cal.App.3d 421 [133 Cal.Rptr. 809], which held that an applicant is entitled to a service-

---

[8]Underlining indicates changes or additions made by the 1980 amendment.

[9]The appellate courts have split on the issue of whether this amended version is applicable to pending cases filed before January 1, 1981 (see *Lundak* v. *Board of Retirement* (1983) 142 Cal.App.3d 1040, 1042-1043, fn. 1 [191 Cal.Rptr. 446] [the amended statute applies]; *Flint* v. *Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 665 [210 Cal.Rptr. 439] [the amended statute does not apply]), and the matter is currently before the California Supreme Court (*Bowen* v. *Board of Retirement* (Cal.App.), review granted June 6, 1985 [the amended statute applies]; *Hoffman* v. *Board of Retirement* (Cal.App.), review granted June 6, 1985 [the amended statute does not apply]).

connected disability if he or she is permanently unable to perform his or her job, and *any* part of the disability is job-connected." (*Lundak, supra,* 142 Cal.App.3d at p. 1045.)

*Lundak* provides that the contribution of the applicant's employment to the disability must be more than "inconsequential," and must be "real and measurable" as set forth in *DePuy* v. *Board of Retirement* (1978) 87 Cal.App.3d 392, 399 [150 Cal.Rptr. 791, 12 A.L.R.4th 1150], and cannot be "so insignificant that no ordinary mind would think of" the employment as a cause of the disability, as set forth in the Restatement Second of Torts, section 431, comment a. (*Lundak, supra,* 142 Cal.App.3d at pp. 1045-1046; accord *Gatewood* v. *Board of Retirement* (1985) 175 Cal.App.3d 311, 320 [220 Cal.Rptr. 724].)

We conclude that the judgment is supported by substantial evidence that there is a "real and measurable" connection between McCoy's employment and his hypertension aggravation, and that reasonable people would regard his employment as a cause of his disability, on the basis of the record in this case. (*Lundak, supra,* 142 Cal.App.3d at p. 1046.)[10]

We therefore conclude that the stipulations were properly before the trial court; moreover, even assuming that they were not admissible, there being ample, competent evidence to support the judgment without such "improper" evidence, and the court not having based its findings on the latter, it is not prejudicial error that the stipulations were admitted.

The judgment is affirmed. Respondent shall recover his costs.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied August 26, 1986, and appellant's petition for review by the Supreme Court was denied October 22, 1986.

---

[10]The California Supreme Court granted review in two recent appellate decisions (*Bowen* v. *Board of Retirement, supra*; and *Hoffman* v. *Board of Retirement, supra* ), which concluded that the Legislature intended to depart from the *DePuy* test relied upon in *Lundak* that the contribution of employment to disability need only be "real and measurable." *Bowen* agreed with Justice Scott's dissenting opinion in *Lundak* that " '[C]ourts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] The synonyms given for 'substantial' in the principal entry in Webster's Third New International Dictionary are: 'material; real, true; important, essential.' " (*Lundak* v. *Board of Retirement, supra,* 142 Cal.App.3d at p. 1048, dis. opn.) In the event that the "material; real, true; important, essential" definition is adopted by the Supreme Court, we remain convinced that the admission of the stipulations was harmless.